UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
JUSTIN MAHER and ANGEL L. MAHER,

       Plaintiffs,

  -against-

CAITLIN H. RAILO and QUALITY BUS
SERVICE, LLC,

       Defendants.
------------------------------------X

**AFFIRMATION IN SUPPORT
OF SUMMARY JUDGMENT MOTION**

Docket No. 14 cv 3586 (VLB)

    Keith V. LaRose, an attorney at law duly authorized to practice before the Courts of this State, affirms the following under the penalties of perjury:

    1. That I am a member of the law firm of LaRose & LaRose, Esqs., attorney for the defendant CAITLIN H. RAILO in the above action, and as such am fully familiar with the facts and circumstances of this matter.

    2. This Affirmation is submitted, along with the accompanying Memorandum of Law and Statement Pursuant to Local Rule 56.1, in support of the defendant's motion pursuant to Rule 56 of the Federal Rules of Civil Procedure for Summary Judgment dismissing the plaintiff's claim for punitive damages. As will be set forth more fully below it is respectfully submitted that the allegations as to the acts and/or omissions of the defendant Caitlyn Railo do not rise as a matter of law to the required level for a finding of punitive damages.

    3. This action was commenced by the plaintiff as a result

of a motor vehicle accident which occurred on February 14, 2013 at approximately 2:30 PM. At the time of the accident the plaintiff was the operator of a Honda automobile. The defendant Railo was operating a school bus owned by the co-defendant Quality Bus Service, LLC (hereinafter referred to as "Quality Bus") while in the scope of her employment as a school bus driver. Plaintiff has asserted diversity jurisdiction based upon the residency of the parties and further on the basis that the case exceeds the minimum amount of $75,000. The accident occurred on a two lane roadway in the Town of Deerpark. The accident occurred as the bus commenced a left hand turn thereby crossing into the lane of travel of the plaintiff causing the ensuing collision. Annexed hereto as defendant's **Exhibit "A"** is a copy of the police report. Annexed hereto as defendant's **Exhibit "B"** is a copy of the summons and complaint filed by plaintiff. Annexed hereto as defendant's **Exhibit "C"** is the later filed second amended complaint. Only Count I of plaintiff's second amended complaint is applicable as to the defendant Railo. It consists of a claim of negligence against Ms. Railo along with allegations which the plaintiff claims will support an award of punitive damages. Counts II through IV of the second amended complaint make allegations solely against co-defendant Quality Bus. Count V asserted a claim of loss of consortium by Angel Mahar. That claim has subsequently been discontinued by the plaintiff via a stipulation. Annexed

hereto as defendant's **Exhibit "D"** is a copy of stipulation under which the claim by plaintiff Angel Mahar for loss of consortium was withdrawn and dismissed. Annexed hereto as defendant's **Exhibit "E"** is a copy of the defendant Railo's verified answer to the second amended complaint which denies the material allegations. Annexed hereto as **Exhibit "F"** is a copy of the verified answer to the second amended complaint by co-defendant Quality Bus.

    4. The happening of the accident with regards to the direction and movements of the two vehicles is somewhat in dispute, and for the purposes of this motion only the defendant states that the evidence produced in connection with this action confirms that when Ms. Railo approached the intersection in question she slowed but did not stop before commencing her left hand turn. She did not stop as she did not observe the plaintiff's vehicle coming from the opposite direction before she commenced her turn. The collision occurred in the plaintiff's lane of travel. Defendant concedes for the purposes of this motion only, that she failed to yield the right of way when she commenced the left turn. The reasons why she did not see the plaintiff's approaching vehicle until it was too late is in dispute. Plaintiff is alleging that it is due to the fact that she had certain medications in her system that she had taken either the evening before or on the morning of the accident. This

is disputed by both defendants, and whether it was the proximate cause of the accident is also in dispute.

5. In essence, plaintiff's allegations that they are entitled to punitive damages from Ms. Railo is based upon her improper left hand turn coupled with the fact that she was charged and found to have by her own admission certain medications in her blood. She was initially charged under a felony complaint of vehicular assault 1 based upon a previous conviction under Section 1192 of the Vehicle and Traffic Law within ten (10) years, and on a simplified information for the charge of endangering the welfare of a child in violation of §260.10 of the Penal Code based upon the fact that there was a single student on the bus at the time of the accident. Annexed hereto as defendant's **Exhibit "G"** are the initial criminal filings. Subsequently an indictment with additional charges was filed. The defendant Railo ultimately plead guilty and was convicted of assault in the second degree under Penal Law §120.05 04 DF and aggravated DWI with a child present under Vehicle and Traffic Law §192.2-A-B 2V EF. Annexed hereto as defendant's **Exhibit "H"** is a copy of the certificate of disposition. The basis of the DWI charge was the blood test results for certain drugs performed on the day of the acident. Those test results are annexed hereto as defendant's **Exhibit "I"**.

6. Going back to plaintiff's complaint, in Count I paragraph "34" the plaintiff sets forth the allegations of

4

negligence as to defendant Railo. In essence, with regards to the allegations of the operation of the school bus and the violations of the Vehicle and Traffic Law, plaintiff adds the word "recklessly" to the allegations in an effort to make it compatible with a claim for punitive damages. In an effort to not repeat the obvious and to keep this Affirmation as short as possible, the Court is referred back to the plaintiff's complaint for the specifics of those allegations. Plaintiff's complaint then alleges in paragraph "38" that the defendant Railo "realized and appreciated the risk of serious bodily injury and/or death posed by failing to exercise reasonable care in the operation of an approximately 36 foot long 11 ton school bus on public roadways and, in particular, through a lane of ongoing traffic". Paragraph "39" and "40" make similar allegations changing the language to add an allegation that she realized the threat when operating under the influence of drugs and/or alcohol, and of disregarding vehicles travelling in the oncoming lane of traffic. Plaintiff then alleges in paragraph "41" that as a result she acted with reckless indifference to the interest of the plaintiff and in paragraph number "42" that her conduct was outrageous, wilful and in conscious disregard of the rights and interest of the plaintiff.

7. Later on, both defendants served the plaintiff with contention interrogatories. Annexed hereto as defendant's **Exhibit**

5

"J" are the revised answers to the contention interrogatories by the plaintiff as to defendant Railo. Since the format of the plaintiff's answers to our contention interrogatories contains the questions posed by this defendant, a copy of the contention interrogatories is not annexed hereto. Paragraph number "1" of our contention interrogatories asked the plaintiff to describe the acts and omissions constituting the alleged negligence of the defendant Railo. As the Court can readily see, it recites the various allegations contained in the complaint about the improper operation of the bus, of making a left hand turn and causing an accident. The only new allegations contained in this answer not in the complaint are as follows "attempting to conceal from defendant Quality Bus Service, LLC a history of drug dependency, medical conditions, and prior criminal convictions"; and, disregarding the safety precautions set forth in the Federal Motor Carrier Safety Regulations Article 19A and the New York State Commissioners Regulations."

Interrogatory number "2" asks for the specific violation sections which are listed in the plaintiff's answer to this interrogatory. Again for the sake of brevity I will not repeat all the allegations and the Court is directed to their response to this interrogatory which basically again lists all the allegations as to the operation of the vehicle, the allegation that she attempted to conceal from Quality Bus a history of drug

dependancy, medical conditions and prior convictions and the allegation of operating a vehicle while impaired. Plaintiff's answer to this interrogatory also refers back to the paragraphs I have cited earlier from plaintiff's complaint where they allege she appreciated the risks and dangers when she operated the bus that day.

8.  As is more fully described and set forth in the accompanying memorandum of law, New York Case Law which has been followed by the Federal Courts for actions here in New York are clear that violations of the Vehicle and Traffic Law on its own will not support a claim for punitive damages. Additionally, the mere fact of an allegation or even a conviction for DWI in and of itself will not constitute a basis for punitive damages, and summary judgment has been granted in such circumstances. The law in New York is that you must look at the totality of all the circumstances involved. This now brings us to a discussion as to the totality of the circumstances, some of which are in dispute and some of which are not.

9.  Concerning the events of that day, not in dispute is the fact that Ms. Railo reported to work that morning and successfully completed without incident her morning bus run. There is not one iota of proof in this case that at any time prior to the accident itself plaintiff experienced any difficulty in the operation of the school bus that day or that she violated any rules of the

7

road.  In fact the on board video from the bus shows in the minutes preceding the accident leading up to the accident itself Ms. Railo was alert.

10. In dispute is the issue of whether the medications found in her system did in fact impair her ability at the time of the incident. Undisputed is the fact that the plaintiff was required in connection with her hiring to submit to a medical examination which was conducted by an independent firm, Partners in Safety, which took place on 10/16/12.  Annexed hereto as defendant's **Exhibit "K"** is the medical examination report completed in part by Ms. Railo, and in part by the representative from Partners in Safety.  As the Court can see, she advised that she had cancer of the cervix and had a hysterectomy performed, and had current medications including Clonidine and Valium.  Ms. Railo further testified at her deposition that she advised this representative that she was currently utilizing Subuxone as a preventative measure for a previous drug use (see pages 150-151; 167; and 171 of the Railo deposition – these and other pages of her deposition will be collectively annexed hereto as **Exhibit "O"**).  In connection with this exam Ms. Railo submitted to a controlled substance test on 10/16/12.  Annexed hereto as defendant's **Exhibit "L"** are the results of those tests which were negative for amphetamines, marijuana, phencyclidine, cocaine and opiates.  Undisputed is the fact that the plaintiff as a cancer patient, and for other issues

8

had been prescribed sleeping pills, prescription pain medications of Percocet, Clonidne and Valium among other items at various times. In connection with her cancer and other problems she had in the year prior to the accident had undergone a hysterectomy for uterine cancer, re-emergence of breast cancer, and had kidney stones, for which she was seeing physicians at Crystal Run Healthcare. Crystal Run's records reflect an office visit on 1/10/13, one month before the accident, for a Vulvar abscess which they had previously treated. An "in office procedure" was conducted that day to again cut and drain the abscess. Active medications, in effect as of that day included Percocet (HCLA/acetaminophen), Valium (Diazepam and Nordiazepam) and Clonidine. The Percocet and Valium would turn up as the categories of drugs found in her blood on the day of the accident. During the visit on 1/14/13, the abscess was again drained. Annexed hereto as defendant's **Exhibit "M"**, are the records from Crystal Run for office visits on 1/10/13 and 1/14/13. Furthermore it should be noted that according to Ms. Railo's statements to the police, the Percocet was taken the evening before the accident around 8 PM, and a "morphine pill" at midnight. Therefore the Percocet had approximately 18 hours to metabolize out of her system and the morphine pill about 14 hours. Valium and Clonidine were the only medications taken that morning. She further testified that her statements to the police contain an error in that she would have

9

taken the Valium earlier that morning around 4 AM, not 9:45 as recorded in the police statements (see Railo deposition page 213, part of **Exhibit "O"**). Depending on which you believe that gave the Valium either about 4 to 10 hours to metabolize. The Railo statements to the police are annexed hereto as defendant's **Exhibit "N"**. It should be noted that at her deposition she testified she did not feel impaired during the afternoon run and although she was uncomfortable from the surgery and a little tired in the morning, she was not tired during the afternoon run (see Railo deposition pages 344-347, 357, 387 - all part of **Exhibit "O"**). She also testified that none of her prescribing doctors told her not to drive with these medications (see Railo deposition pages 305-306 - all part of **Exhibit "O"**). All the Railo deposition testimony referred to above in this paragraph is annexed hereto as defendant's **Exhibit "O"**.

11.   Therefore, plaintiff's allegation that the defendant Railo attempted to hide from Quality her use of certain prescription medications is denied.  The fact of the matter is it is undisputed that Partners in Safety after learning of her medications at that time and checking with her prescribing physician for the Valium, Dr. Galli, cleared her as being safe to drive. More importantly, her drug test done by Partners In Safety was negative for opiates, showing that she was not actively using a previous prescription for Percocet at the time. There was no

State requirement for her to report the later prescriptions and there is no evidence any professional advised her not to drive while taking them.

    12.    Plaintiff further alleges that the defendant Railo failed to disclose certain accidents and prior criminal convictions. This again is categorically denied by the defendant and I submit there is no proof in this case to support plaintiff's contentions. Undisputed is the fact that her initial employment application with Quality Bus, in the section requesting information for accidents in the *past three years*, she listed a rear-end accident occurring near a car dealership in 2010, and in the section requesting traffic convictions for the *past three years* she listed one in May of 2012 in Deerpark with a fine of parking on pavement and one in Pennsylvania in 2012 for speeding, 63 in a 55 zone. The employment application does not ask for information on other criminal convictions or charges. Undisputed is that nowhere in the application process was Ms. Railo asked to disclose anything in addition as alleged by plaintiff. Furthermore undisputed is that to be employed as a bus driver she had her fingerprints taken and then those fingerprints and driver's license were run by the State of New York. The results of the checks by the State of New York revealed the accident that Ms. Railo described as occurring in 2010 (which in fact occurred on 3/17/11). It also revealed the Deerpark conviction she

11

referred to as parking on pavement, as a disobeyed traffic device on 7/10/12. It also revealed the Pennsylvania speeding charge (which actually occurred on 2/23/12). The only other additional items turned up in the background checks by the State was a charge of operating without insurance which was initially charged on 8/24/07. It also revealed a DWI charge incurred on 12/22/03, with a conviction date of 1/5/04. (This is the prior DWI which served as the basis of the conviction in our case for aggravated assault). Despite these additional charges turning up in the background search, the State certified her to operate a bus on 11/2/12. Annexed hereto as defendant's **Exhibit "P"**, is the plaintiff's initial application, fingerprint search permission, the search results done by the State, and the certification to operate a school bus issued by the State of New York.

    13.  Common sense and experience shows that people get involved in accidents similar to this, of improperly making a left hand turn, based upon either a failure to observe an oncoming vehicle or appreciate its approaching speed, for example. This type of accident is very common. Common sense is that normally this is a plain and simple accident, the result of ordinary negligence. Therefore, there's nothing about the manner in which Ms. Railo initiated her left hand turn supports a claim that it was the degree of moral turpitude to constitute reckless conduct for punitive damages purposes. The mere fact that the plaintiff

adds allegations that she did so recklessly does not change the fact. Although she did have the various medications in her system, there is no proof that it actually impaired her driving, or was the actual proximate cause of her accident, despite speculation by plaintiff. Again it is noted that the toxicology levels from the blood tests done on the day of the accident revealed results that would reflect the normal intake of her prescription medications. There is no proof that the fact that she had ingested these drugs, some the night before and some that morning, was a proximate cause of the accident. Speculation that it might have would not rise to the level required for this Court to allow the claim for punitive damages to stand.

14. Furthermore, it is respectfully submitted that the fact that the defendant Ms. Railo was a recovered drug addict in and of itself would not support the award of punitive damages. The fact that she may have had a prior addiction problem is of no consequence and would support a claim for punitive damages. In fact, as I'm sure this Court is aware, New York State sanctions and allows drivers with commercial licenses that have had either drug or alcohol dependency problems to have their licenses reinstated after they have been through the appropriate programs and cleared by medical professionals. Therefore the fact that she did not disclose her prior drug issues directly to Quality Bus would not qualify for punitive damages. Again, there is nothing

13

in the law that required her to do so, and it was not ever asked of her. The fact is that indirectly she did not hide her prior drug dependency issues by virtue of disclosing to Partners in Safety the fact that she was taking the prescribed medication of Suboxone.

15. In summary, it is respectfully submitted that the evidentiary proof in this case establishes that the happening of the accident was your typical failure to yield during a left turn. There is no evidence to support a finding other than negligence concerning her operation of the bus that day. Furthermore, the fact that she had certain drugs in her blood at the time of the accident which supports a conviction for operating while ability impaired, in and of itself as well does not warrant the Court to allow the allegation of punitive damages to stand. First, there is no proof in this litigation that those drugs actually impaired her abilities and/or were a proximate cause of the accident. Secondly, as is more fully set forth in the Memorandum of Law, a conviction for operating while ability impaired, whether by alcohol and/or drugs, in and of itself does not warrant this Court to allow the claim for punitive damages to stand. The Courts have dismissed punitive damages where the driver had high levels of Blood alcohol. The case law even has established that in instances where there have been prior convictions for DWI coupled now with the new DWI conviction, in and of itself does not warrant the

14

imposition of punitive damages. The acts of a party must reflect moral turpitude or evil intent, per case law, which clearly doesn't exist here.

With regards to the allegation that hid her accident or vehicle and traffic violations history, this is denied by the defendant Railo, and even if it could be argued that she forgot certain charges, they all turned up in background checks performed by the State of New York, who then sanctioned her to drive school buses for Quality. As such, the claimed concealment of these charges does not warrant the Court to allow the claim for punitive damages on this basis. Again, the undisputed proof is that she did not hide her accident history nor was there any requirement to disclose her prior drug dependency issues or the fact that she was being treated at a mental health clinic for this and anxiety issues.

It is therefore respectfully submitted that the defendant's motion for summary judgment should be granted dismissing the plaintiff's claims for punitive damages as to the defendant Railo.

Dated:   Poughkeepsie, NY
         October 1, 2015.

Yours etc.,

_____
Keith V. LaRose
LaRose & LaRose, Esqs.
Bar Roll No: KL2012
Attorneys for Defendant
CAITLYN H. RAILO
Poughkeepsie, NY 12601
(845) 454-2001
Email:laroseandlarose@gmail.com

TO: Law Offices of Cognetti & Cimini         (*via ECF/CM*)
Attorneys for Plaintiff Justin T. Mahar
Scranton Electric Bldg., 7th Floor
507 Linden Street
Scranton, PA 18503

Evan M. Foulke, Esq.         (*via ECF/CM*)
Foulke Law Offices
Counsel for Plaintiff Justin T. Mahar
25 Main Street, 3rd Floor
Goshen, NY 10924

Maynard, O'Connor, Smith & Catalinotto, LLP  (*via ECF/CM*)
Attorneys for Quality Bus Service, LLC
3154 Route 9W
PO Box 180
Saugerties, NY 12477