UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUSTIN T. MAHER,

                        Plaintiff,

-against-                             Case No:14 CV 3586 (VLB)

CAITLIN H. RAILO and
QUALITY BUS SERVICE, LLC,

                        Defendants.

## STATEMENT OF MATERIAL FACTS
## PURSUANT TO LOCAL CIVIL RULE 56.1
## IN SUPPORT OF
## QUALITY BUS SERVICE, LLC's
## MOTION FOR PARTIAL SUMMARY JUDGMENT

The defendant QUALITY BUS SERVICE, LLC ("Quality"), by and through its attorneys, Maynard, O'Connor, Smith & Catalinotto, LLP, as and for its Statement of Material Facts Pursuant to Local Civil Rule 56.1, sets forth that:

1.     Included in its hiring process, Quality's Co-Owner and Manager, Michael Martucci, considered codefendant CAITLIN H. RAILO's ("Railo") employment history for the prior three (3) years in accordance with 15 NYCRR 6.1 (Martucci Affid., ¶ 3, Exhibit A).

2.     Included in Quality's hiring process, Mr. Martucci considered Railo' driving history including any traffic convictions or accidents for a minimum of three (3) years (Martucci Affid., ¶¶ 5-7, Exhibit A).

1

3. Included in Quality's hiring process, Mr. Martucci obtained and considered Railo's driving record abstract from the New York State Department of Motor Vehicles (hereinafter as "DMV") (Martucci Affid., ¶ 8, Exhibit B).

4. Included in Quality's hiring process, Mr. Martucci confirmed with the DMV that Railo had obtained a commercial driver's license with the necessary P & S (passenger and school) endorsements (Martucci Affid., ¶¶ 9-10, Exhibit C).

5. Both Railo's DMV driving record abstract and the DMV's 19-A Driver Activation Receipt demonstrate that Railo was fully licensed to operate a school bus by the DMV (Martucci Affid., Exhibits B and C).

6. Railo passed a criminal history background check processed through the NYS Division of Criminal Justice Services and the Federal Bureau of Investigation (Martucci Affid., ¶¶ 12-13, Exhibit D);

7. Railo passed a pre-employment physical administered by Partners in Safety (Ames Affid., ¶ 17, Exhibit A).

8. Partners in Safety obtained clearance from Railo's physician, Dr. Galli, certifying that the medications disclosed by Railo would not affect Railo's ability to safely operate a commercial motor vehicle (Ames Affid., ¶¶ 14-15, Exhibit B).

9. Railo passed a pre-hire drug screening test administered by Partners in Safety (Martucci Affid., ¶ 16, Exhibit E; Railo Depo., p. 297).

10. During the hiring process, Railo never disclosed to Quality her past drug use or that she was prescribed Suboxone[1] (Railo Depo., pp. 145-146, 297, 299).

---

[1] Suboxone is used to treat opiate addiction.

11. Quality has a policy prohibiting its drivers from operating school buses while under the influence of or affected by alcohol and/or drugs, including prescription medications. Quality requires that any medications that a school bus driver are prescribed be medically cleared by the prescribing physician before the driver is allowed to drive a school bus. Drivers are also required to notify Quality of any new medications they are prescribed once employed by Quality, and obtain medical clearance from the prescribing physician verifying that the new medication will not adversely affect the driver's ability to safely operate a school bus (Martucci Affid., ¶ 17).

12. Railo was advised of this Policy during the Pre-service Course, and acknowledged being aware of it during her deposition (Martucci Affid., ¶ 18; Koselnak Affid., ¶ 4-5; Railo Depo., p. 311).

13. Quality performs random drug and alcohol screenings, as well as whenever there is any suspicion that a driver may be under the influence of drugs and/or alcohol (Martucci Affid., ¶¶ 19-20).

14. Quality employees Mary Koselnak and Karen Wells are both New York State Department of Motor Vehicles Article 19-A Examiners, and also New York State Certified School Bus Driver Instructors. The instruction and evaluation they provide to school bus drivers being trained and employed by Quality, including Railo, is in accordance with their training and the applicable New York State and Federal Motor Carrier regulations (Koselnak Affid., ¶ 3; Wells Affid., ¶2).

15. Ms. Koselnak administered the Pre-Service Course of instruction to Railo, which specifically addressed Quality's Policy prohibiting the use of alcohol and drugs, *supra* (Koselnak Affid., ¶¶ 4-5, Exhibit A).

16. Ms. Koselnak and Ms. Wells trained Railo on how to safely operate a school bus (Koselnak Affid., ¶¶ 6; Wells Affid.,¶ 3).

17. Railo also trained with an experienced "mentor driver" before driving students alone (Koselnak Affid., ¶ 7).

18. Once Railo was assigned her regular bus route, Route JJ, Ms. Wells trained her on that route. Ms. Wells rode along with Railo and showed her all of the student bus stop locations. Ms. Wells specifically trained Railo on how to safely execute the left-hand turn at the intersection of Peenpack Trail and Route 209, the exact location and direction of the accident (Wells Affid., ¶ 4).

19. Railo began the New York State Education Department Basic Course of Instruction (30 hours of duration), but did not complete it, because the accident on February 14, 2013 occurred before the later portions of this course were held (Koselnak Affid., ¶ 8).

20. On December 3, 2012, Ms. Koselnak administered to Railo an Annual Defensive Driving Performance for Driver Under Article 19-A review (Koselnak Affid., ¶ 10, Exhibit B).

21. On December 18, 2012, Ms. Koselnak administered to Railo an Article 19-A Biennial Behind the Wheel Road Test (Koselnak Affid., ¶ 11, Exhibit C).

22. On December 12, 2012, Ms. Koselnak administered to Railo a Biennial Article 19-A Written Examination (Koselnak Affid., ¶ 12, Exhibit D).

23. On November 6, 2012, Ms. Koselnak administered to Railo physical performance tests in accordance with 8 NYCRR 156.3 b3 iii (Koselnak Affid., ¶ 13, Exhibit E ).

24. On February 13, 2013, Ms. Koselnak administered to Railo a second physical performance test in accordance with 8 NYCRR 156.3 b3 iii (Koselnak Affid., ¶ 14, Exhibit F).

25. Mr. Martucci, Ms. Koselnak and Ms. Wells each previously received Reasonable Suspicion Supervisor training, which instructed them on how to detect physical, behavioral, speech and performance cues related to alcohol and drug use (Martucci Affid., ¶ 21; Koselnak Affid., ¶ 17; Wells Affid., ¶ 5).

26. At no time before the accident on February 14, 2013, including her physical performance test on February 13, 2013 (the day before the accident), was there ever a time when Railo demonstrated any physical, behavioral, speech and performance cues indicative of alcohol or drug use (Marcucci Affid., ¶ 23; Koselnak Affid., ¶ 27-28; Wells Affid., ¶ 15).

27. Nor were there any other complaints or issues made to Quality regarding Railo prior to the subject accident which would have served as notice that she was unfit to operate a school bus (Martucci Affid., ¶¶ 22-23; Koselnak Affid., ¶¶ 12-14, 27-28).

28. Neither Mary Koselnak nor Karen Wells have any recollection of receiving a call from Railo the morning of February 14, 2013 (Koselnak Affid., ¶¶ 20-21; Wells Affid., ¶¶ 8-9).

29. Had Railo called-out sick on February 14, 2013, that would not have presented an issue because there were three (3) substitute bus drivers available on that day, in addition to the four (4) Quality office workers who were also licensed and able to drive a school bus if needed (Martucci Affid., ¶ 1; Koselnak Affid., ¶ 22; Wells Affid., ¶ 10, Exhibit A).

30. Railo never notified Quality of her Percocet prescription or obtained medical clearance from her doctor (Railo Depo., p. 311; Martucci Affid., ¶ 24).

31. Before driving each route, the driver must check-in with one of the dispatchers in order to obtain the keys for his or her assigned school bus (Koselnak Affid., ¶ 16).

32. On February 14, 2013, Mary Koselnak and Karen Wells were dispatchers at Quality's Sparrowbush location (Koselnak Affid., ¶ 18; Wells Affid., ¶ 6).

33. Each time a driver, including Railo, came to either Ms. Koselnak or Ms. Wells to obtain school bus keys, they checked the driver's appearance and engaged the driver in conversation for the purpose of assessing their condition including any physical, behavior, speech or performance cues which may indicate that person may be under the influence of drugs and/or alcohol and/or not fit to operate a school bus. If there is any suspicion that the driver may potentially be under the influence of drugs and/or alcohol (or unfit to drive a school bus for any other reason), they are not given the keys and one of the managers of Quality is alerted. That driver does not drive a bus until further investigation is made including a drug and/or alcohol screening by a medical professional, and it is determined that he or she is fit to drive a school bus (Koselnak Affid., ¶¶ 18-19; Wells Affid., ¶¶ 6-7).

34. Railo arrived for work on February 14, 2013 (the day of the accident) at 6:00 AM (Railo Depo., p. 305).

35. Neither Ms. Koselnak nor Ms. Wells have a recollection of Railo coming to the depot to get school bus keys on February 14, 2013 before either the morning or afternoon routes. However, if Railo had demonstrated any physical, behavioral, speech or performance cues indicative of alcohol and/or drug use at either of those times, Ms. Koselnak and/or Ms. Wells would have found that memorable and taken corresponding action including not giving her keys and referring her to a manager (Koselnak Affid., ¶ 25; Wells Affid., ¶ 13).

6

36.     The fact that neither Ms. Koselnak nor Ms. Wells have a specific memory of Railo's appearance on February 14, 2013 before the accident, coupled with the fact that she was given keys, shows that Railo was fit to operate a school bus and did not demonstrate any physical, behavioral, speech or performance cues indicative of alcohol and/or drug use at that time (Koselnak Affid., ¶ 26; Wells Affid., ¶ 14).

37.     In-between her morning and afternoon routes, Railo did not tell anyone at Quality that she did not feel well (Railo Depo., pp. 302, 304).

38.     Railo felt more tired in the morning than during the afternoon route (Railo Depo., p. 357).

39.     Railo felt she was able to drive a bus, and did not feel that her ability to do so was impaired (Railo Depo., pp. 345, 346-347, 379, 387).

40.     Following the accident, Ms. Koselnak sat with Railo at the Town of Deerpark Highway Barn break-room, and then the hospital. There was nothing in Railo's behavior following the accident which demonstrated to Ms. Koselnak any physical, behavioral, speech or performance cues indicative of alcohol or drug use at that time (Koselnak Affid., ¶ 30).

Dated: September 30, 2015

MAYNARD, O'CONNOR, SMITH
& CATALINOTTO, LLP

*[signature]*

Adam T. Mandell, Esq.
*[Bar Roll No. AM0612]*
Attorneys for the defendant
QUALITY BUS SERVICE, LLC
P.O. Box 180
Saugerties, New York 12477
(845) 246-3668
mandell@maynardoconnorlaw.com