UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUSTIN T. MAHER,

Plaintiff,

-against-

CAITLIN H. RAILO and
QUALITY BUS SERVICE, LLC,

Defendants.

Case No:14 CV 3586 (VLB)
Hon. Judith C. McCarthy

# MEMORANDUM OF LAW
# IN SUPPORT OF
# QUALITY BUS SERVICE, LLC's
# MOTION TO DISMISS
# &
# MOTION FOR SUMMARY JUDGMENT

Dated:     September 30, 2015

MAYNARD, O'CONNOR, SMITH &
CATALINOTTO, LLP
Attorneys for the defendant
QUALITY BUS SERVICE, LLC
P.O. Box 180
Saugerties, New York 12477
(845) 246-3668

[M0765763.1]

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

MOTION TO DISMISS PURSUANT TO RULE 12(c) ............................................. 3

    STANDARD OF REVIEW ................................................................................. 3

    THE PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES
    ARE NOT ACTIONABLE AS A MATTER OF LAW ................................... 4

MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO RULE 56 (a) .......... 6

    STANDARD OF REVIEW ................................................................................. 6

    PUNITIVE DAMAGES IN NEW YORK ........................................................ 7

    QUALITY ACTED IN GOOD FAITH & DID NOT RATIFY
    OR CONDONE RAILO OPERATING A SCHOOL BUS
    WHILE IMPAIRED BY DRUGS ..................................................................... 8

    Quality's Good Faith Efforts in Hiring, Training & Supervision.................... 9

    Quality Did Not Ratify or Condone Railo's Drug Use ................................. 14

    THE PLAINTIFF'S CLAIMS FOR NEGLIGENT
    & CORPORATE LIABILITY, AND NEGLIGENT ENTRUSTMENT
    SHOULD ALSO BE DISMISSED ................................................................... 19

CONCLUSION ......................................................................................................... 20

[M0766129.1]

## TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505,
91 L.Ed.2d 202 (1986) ................................................................. 6, 19

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) .................... 6

*Davidson v. Flynn*, 32 F.3d 27 (2d Cir.1994) ......................................... 3

*Dombrowski v. Eastland*, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967) .................... 6, 7

*Greenbaum v. Svenska Handelsbanken, NY*, 979 F.Supp. 973 (S.D.N.Y.1997) ....................... 7

*Inst. for Shipboard Educ. v. Cigna Worldwide Ins. Co.*, 22 F.3d 414 (2d Cir.1994) ............... 6

*Marcoux v. Farm Service and Supplies, Inc.*, 283 F.Supp.2d 901
(SDNY 2003) .............................................................. 4, 5, 6, 7, 8, 9, 13, 18, 19

*Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639 (2d Cir.1988) ............................. 3

*Sheppard v. Beerman*, 18 F.3d 147 (2d Cir.1994), *cert. denied*,
513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994) ........................................ 3

*West v. Goodyear Tire & Rubber Co.*, 973 F.Supp. 385 (S.D.N.Y.1997) ........................ 7

### STATE CASES

*Coville v. Ryder Truck Rental, Inc.*, 30 AD3d 744 (3d Dept.2006) .......................... 4

*Evans v. Stranger*, 307 AD2d 439 (3d Dept.2003) ....................................... 4, 5, 11

*James v Eber Bros. Wine & Liquor Corp.*, 153 AD3d 329 (4th Dept.1990) ..... 8, 10, 14, 15, 18

*Rinaldo v. Mashayekhi*, 185 A.D.2d 435, 585 N.Y.S.2d 615 (3d Dept.1992) ........................ 7

*Watson v. Strack*, 5 AD3d 1067 (4th Dept.2004) ................................. 4, 5, 9, 11, 12, 19

**Page**

## STATUTES, RULES & REGULATIONS

Fed. Rule Civ. Pro. 12 (c) ..................................................................................1, 3, 19

Fed. Rule Civ. Pro. 56 (a) ......................................................................................1, 6

New York State Vehicle and Traffic Law § 509-1-1 ....................................................14

## PRELIMINARY STATEMENT

This lawsuit arises from a motor vehicle accident on February 14, 2013, at the intersection of State Route 209 and Peenpack Trail, in the town of Deerpark, Orange County, New York, when the vehicle driven by the Plaintiff JUSTIN T. MAHER (hereinafter as "Plaintiff") collided with a school bus owned by the defendant QUALITY BUS SERVICE, LLC (hereinafter as "Quality") and driven by Quality's employee, codefendant CAITLIN H. RAILO (hereinafter as "Railo"). At the time of the accident, Railo was attempting to make a left-hand turn when the Plaintiff's car was coming from the opposite direction (Doc. 8, ¶¶ 24-29). The Plaintiff alleges that Railo was under the influence of drugs and/or alcohol at the time of the accident (Doc. 8, ¶ 20).

Quality brings this Motion pursuant to Rule 12 (c) and Rule 56 (a) of the Federal Rules of Civil Procedure, seeking dismissal of the Plaintiff's punitive damages claims, as well as his claims for Negligence & Corporate Liability (Count III) and Negligent Entrustment (Count IV). The basis for Quality's Motion to Dismiss pursuant to Rule 12 (c) is that even when assuming the facts alleged in the Second Amended Complaint are true, the Plaintiff's claims for punitive damages are not actionable as a matter of law.

Quality also moves pursuant to Rule 56 (a) for partial summary judgment, seeking the dismissal of the Plaintiff's claims for punitive damages. The evidence offered in support of its Motion demonstrates that Quality made good faith efforts in its hiring, training and supervision of Railo, and never ratified or condoned her driving a school bus while impaired by drugs. The fact that Quality undertook earnest efforts to properly hire, train and supervise Railo, and was without notice of her purported drug use, disproves any claim that its conduct was so reckless or wantonly negligent as to warrant the imposition of punitive damages.

1

If the Plaintiff's claims for punitive damages are dismissed, then his claims for Negligence & Corporate Liability (Count III) and Negligent Entrustment (Count IV) are also subject to dismissal.

## MOTION TO DISMISS PURSUANT TO RULE 12 (c)

Quality's Motion to Dismiss pursuant to Rule 12 (c) of the Federal Rules of Civil Procedure should be granted because, even when assuming the facts alleged in the Second Amended Complaint to be true, the Plaintiff is not entitled to an award of punitive damages as a matter of law.

## STANDARD OF REVIEW

Judgment on the pleadings pursuant to Rule 12(c) is appropriate where material facts are undisputed and a judgment on the merits is possible merely by considering the contents of the pleadings. *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir.1988).  In considering a motion for a judgment on the pleadings, the Court must accept as true all of the non-movant's well pleaded factual allegations, and draw all reasonable inferences in favor of the non-movant. *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir.1994). Unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim which could entitle the plaintiff to relief, the court cannot grant a defendant's motion for a judgment on the pleadings. *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994), *cert. denied*, 513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994) (when deciding a Rule 12(c) motion, the court applies the same standard as that applicable to a 12(b)(6) motion).

## THE PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES
## ARE NOT ACTIONABLE AS A MATTER OF LAW

The Plaintiff's claims for punitive damages are not actionable as a matter of law. The gravamen of the Plaintiff's claims against Quality is it is vicariously liable for the negligent and/or culpable conduct of codefendant Railo based on Quality's actual or constructive knowledge that Railo was not fit to operate a school bus; that Quality knew that Railo lacked the skill and judgment to safely operate a school bus; Railo failed to exercise reasonable care in the operation of its school busses; and, Railo was operating its school buses while she was under the influence of drugs (Doc. 8, ¶¶ 43-51). The Plaintiff also claims that Quality was negligent in the hiring, instruction, supervision and retention of Railo (Doc. 8, ¶¶ 52-59); and, negligently entrusted Railo with a school bus based on her history of unsafe and reckless driving (Doc. 8, ¶¶ 60-69).

Even presuming those allegations to be true and affording the Plaintiff the benefit of every favorable inference, those allegations fail to state a viable claim for punitive damages. *Evans v. Stranger*, 307 AD2d 439 (3d Dept.2003); *Coville v. Ryder Truck Rental, Inc.*, 30 AD3d 744 (3d Dept.2006); *Watson v. Strack*, 5 AD3d 1067 (4th Dept.2004); *Marcoux v. Farm Service and Supplies, Inc.*, 283 F.Supp.2d 901 (SDNY 2003).

In *Evans, supra*, the Third Department Appellate Division affirmed the lower court's order dismissing the plaintiff's claims for punitive damages. In that case, the defendant employer knew that the driver had a recent conviction for driving while intoxicated when it hired him as a bus driver; permitted him to take a leave of absence rather than terminate him after his repeated drug use, and reinstated him as a bus driver rather quickly and without continued monitoring beyond the first year. In that case, the Third Department held that

4

employer's conduct, was not so flagrant as to transcend mere carelessness or so wantonly reckless as to evince a conscious disregard for the rights of others, which would state a viable claim for an award of punitive damages. *Evans*, 307 AD2d at 440-441.

Similarly, in *Watson*, *supra*, the plaintiff claimed that the defendant employer was liable for not conducting an investigation into the driving record of its employee driver, and for failing to monitor his driving record once hired. The Fourth Department held that failure to investigate into the driving record of an employee was insufficient to impose an award of punitive damages. *Watson*, 5 AD3d at 1068.

In *Marcoux*, *supra*, the U.S. District Court for the Southern District of New York (Hon. William C. Conner) granted the defendant's motion for partial summary judgment dismissing the plaintiff's punitive damages claims, holding that New York Vehicle and Traffic Law § 388, which imputes to the owner of a motor vehicle the negligence of one who uses or operates it with his permission, does not provide a basis for an award of punitive damages. *Marcoux*, 283 F.Supp.2d at 912.

In this case, the Plaintiff's claims against Quality for punitive damages should be dismissed because, even when assuming the facts alleged in the Second Amended Complaint are true, the Plaintiff has failed to state a viable claim for punitive damages. Even if Quality knew that Railo had a propensity for drug use and/or a history of driving while under the influence of drugs and/or prior accidents, that is not a basis to impose punitive damages. *Evans*, 307 AD3d at 440. Nor can Quality be held liable for punitive damages for failing to investigate Railo's driving history. *Watson*, 5 AD3d at 1068. There are simply no factual allegations in the Second Amended Complaint which allege inadequacies in Quality's hiring or retention of Railo that rise to the level of imposing punitive damages. *Watson*, *supra*, 5

AD3d at 1068.   Quality cannot be held vicariously liable for punitive damages simply because it was the employer of Railo and the owner of the bus she was driving at the time of the accident. *Marcoux*, 283 F.Supp.2d at 912.   Quality's Motion should be granted because the Plaintiff has failed to state a viable claim for punitive damages.

## MOTION FOR PARTIAL SUMMARY JUDGMENT
## PURSUANT TO RULE 56 (a)

Quality's Motion for partial summary judgment dismissing the Plaintiff's punitive damages claims should be granted because the evidence offered in support of its Motion demonstrates that Quality made good faith efforts in its hiring, training and supervision of Railo, and did not ratify or condone her driving a school bus while her ability to do so was impaired by drugs.

## STANDARD OF REVIEW

The defendants' motion for summary judgment will be granted if no genuine issue of material fact remains to be decided and the undisputed facts warrant judgment for the defendants as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Inst. for Shipboard Educ. v. Cigna Worldwide Ins. Co.*, 22 F.3d 414, 418 (2d Cir.1994). If a reasonable jury could return a verdict for the plaintiffs, then a material issue of fact remains in contention and the motion for summary judgment must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On the other hand, if the evidence in favor of the non-movant is "merely colorable" or insufficient for a jury to find in his favor, summary

judgment may still be granted. *Id.* at 248–50, 106 S.Ct. 2505 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967)). The materiality of the facts is determined by the substantive law governing the claims. *Id.* at 248, 106 S.Ct. 2505.

## PUNITIVE DAMAGES IN NEW YORK

The threshold for establishing punitive damages in New York is "demanding," requiring the plaintiff to demonstrate that the defendant's conduct was "so reckless or wantonly negligent as to be the equivalent of a conscious disregard of the rights of others and that the conduct demonstrates a high degree of moral culpability." *West v. Goodyear Tire & Rubber Co.*, 973 F.Supp. 385, 387 (S.D.N.Y.1997) (*quoting Rinaldo v. Mashayekhi*, 185 A.D.2d 435, 585 N.Y.S.2d 615 (3d Dept.1992)).

As summarized in *West v. Goodyear, supra*:

New York courts have used a variety of phrases to describe the "moral culpability" that will support punitive damages for non-intentional torts including: "utter recklessness;" "reckless and of a criminal nature, and clearly established;" "wanton or malicious, or gross and outrageous" or "a design to oppress and injure;" "conscious indifference to the effect of his acts;" action "committed recklessly or wantonly, i.e., without regard to the rights of the plaintiff, or of people in general." In summary, ... the recklessness that will give rise to punitive damages must be close to criminality and like criminal behavior, it must be clearly established.... [E]ven where there is gross negligence, punitive damages are awarded in singularly rare cases such as cases involving an improper state of mind or malice or cases involving wrongdoing to the public. 973 F.Supp. at 387 (internal quotation marks, alterations and citations omitted).

"[A] plaintiff seeking punitive damages in New York must prove the existence of these factors by a preponderance of the evidence." *Marcoux*, 283 F.Supp.2d at 908 (*citing Greenbaum v. Svenska Handelsbanken, NY*, 979 F.Supp. 973, 982–83 (S.D.N.Y.1997).

### QUALITY ACTED IN GOOD FAITH & DID
### NOT RATIFY OR CONDONE RAILO
### OPERATING A SCHOOL BUS WHILE IMPAIRED BY DRUGS

Quality's motion for partial summary judgment should be granted because its good faith efforts in the hiring, training, and supervision of Railo, disprove any claim that its conduct was so reckless or wantonly negligent as to warrant an award of punitive damages. *Marcoux*, 283 F.Supp.2d 901. In addition, Quality was without notice of Railo's purported drug use, and never ratified or condoned her driving a school bus while her ability to do so was impaired by drugs. *James v Eber Bros. Wine & Liquor Corp.*, 153 AD2d 329 (4th Dept.1990).

In *Marcoux, supra*, the U.S. District Court for the Southern District of New York granted the defendants' motion for partial summary judgment, dismissing the plaintiff's claims for punitive damages. In that case, the defendant established that it had a regular inspection and maintenance program, thereby disproving the plaintiff's claims that the employer was wilfully indifferent to its safety obligations with respect to the maintenance of a tractor-trailer. *Marcoux*, 283 F.Supp.2d at 908-909, 912.

In *James, supra*, the Appellate Division, Fourth Department modified the lower court's judgment, thereby vacating an award for punitive damages. In that case, the employer did not permit or condone its employees drinking on a regular basis; and, had no notice of its employee driving while intoxicated or other alcohol related incidents. As such,

the Fourth Department held that there was no evidence that the employer ratified the employee's conduct of driving while intoxicated. *James*, 153 AD2d at 333.

### ***Quality's Good Faith Efforts in Hiring, Training & Supervision***:

Quality's motion should be granted because its good faith efforts in the hiring, training and supervision of Railo disprove any claim that it acted with wilful indifference or was wantonly negligent. *Cf. Marcoux*, 283 F.Supp.2d at 908-909, 912. The Affidavit of Quality's Co-Owner and Manager, Michael Martucci, is *prima facie* proof of Quality's good faith efforts in its employment screening and hiring of Railo. In his Affidavit, Mr. Martucci avers that included in the hiring process, he investigated Railo's employment and driving history (Martucci Affid., ¶¶ 3-7, Exhibit A). Mr. Martucci obtained Railo's driving record abstract from the New York State Department of Motor Vehicles (hereinafter as "DMV") and confirmed with the DMV that Railo had obtained a commercial driver's license with the necessary P & S (passenger and school) endorsements (Martucci Affid., ¶¶ 8-11, Exhibits B and C).

As part of the hiring process, a criminal history background check of Railo was processed through the NYS Division of Criminal Justice Services and the Federal Bureau of Investigation (Martucci Affid., ¶¶ 12-13, Exhibit D); and, Railo passed a pre-employment physical and drug screening test administered by Partners in Safety (Martucci Affid., ¶¶ 14-16, Exhibit E; Ames Affid., ¶¶ 3-17, Exhibit A; Railo Depo., p. 297). During the hiring process, Railo never disclosed to Quality her past drug use or that she was prescribed

Suboxone[1] (Railo Depo., pp. 145-146, 297, 299).   Mr. Martucci's earnest efforts in the screening and hiring of Railo disprove any claim that Quality acted with the requisite wilful indifference or was wantonly negligent, needed to support an award of punitive damages. *Cf. Marcoux*, 283 F.Supp.2d at 908-909, 912; *cf. Watson, supra*, 5 AD3d at 1068.

Quality's enactment and enforcement of its policy prohibiting the use of drugs and alcohol by its school bus drivers, also disprove any claim that it was willfully indifferent or wantonly negligent with respect Railo's alleged drug use.   *See James*, 153 AD2d at 332. Quality has a policy prohibiting its drivers from operating school buses while under the influence of or affected by alcohol and/or drugs, including prescription medications.  Quality requires that any medications that a school bus driver is prescribed be medically cleared by the prescribing physician before the driver is allowed to drive a school bus.  Drivers are also required to notify Quality of any new medications they are prescribed once employed by Quality, and obtain medical clearance from the prescribing physician verifying that the new medication will not adversely affect the driver's ability to safely operate a school bus (Martucci Affid., ¶ 17).  Railo was advised of this Policy during her Pre-Service Course, and acknowledged being aware of it during her deposition (Martucci Affid., ¶ 18; Koselnak Affid., ¶ 4-5; Railo Depo., p. 311).

In order to supervise its drivers and enforce compliance with the aforesaid policy, Quality performs random drug and alcohol screening tests, as well as whenever there is any suspicion that a driver may be under the influence of or impaired by drugs and/or alcohol (Martucci Affid., ¶¶ 19-20).   Quality's managers and dispatchers received Reasonable Suspicion Supervisor training in order to detect physical, behavioral, speech and

---

[1] Suboxone is used to treat opiate addiction.

performance cues related to alcohol and drug use (Martucci Affid., ¶ 21; Koselnak Affid., ¶ 17; Wells Affid., ¶ 5). The fact that Quality has this policy and enforces compliance through random and reasonable suspicion drug screening tests, disproves any claim that it was wilfully indifferent or wantonly negligent with respect to any potential drug use of its employees, including Railo. *James*, 153 AD2d at 332. Even if Quality was aware of Railo's drug use, which it denies, that still would not be a basis for the imposition of a punitive damages award. *Evans*, *supra*, 307 AD2d 439 (3d Dept.2003).

The Affidavits of Quality employees Mary Koselnak and Karen Wells are *prima facie* proof of Quality's earnest efforts in the training and supervision of Railo, disproving any claim that Quality was reckless or wantonly negligent by not training Railo and entrusting her with a school bus. *Watson*, *supra*, 5 AD3d at 1068. Both Ms. Koselnak and Ms. Wells are New York State Department of Motor Vehicles Article 19-A Examiners, and also New York State Certified School Bus Driver Instructors. The instruction and evaluation they provide to school bus drivers being trained and employed by Quality, including Railo, is in accordance with their training and the applicable New York State and Federal Motor Carrier regulations (Koselnak Affid., ¶ 3; Wells Affid., ¶2).

Ms. Koselnak administered the Pre-Service Course of instruction to Railo, which specifically addressed Quality's Policy prohibiting the use of alcohol and drugs by its drivers, *supra* (Koselnak Affid., ¶¶ 4-5, Exhibit A). Ms. Koselnak and Ms. Wells trained Railo on how to safely operate a school bus. Railo practiced driving under direct supervision and instruction, first in Quality's parking lot, and then on the road, until she demonstrated the ability to pass her driving test administered by the New York State Department of Motor Vehicles. Railo received "on-the-road" training multiple times per week over the period of

11

several weeks.  Included in her driver instruction, Railo was trained on how to safely drive in the roadway; visualize the roadway ahead of her including oncoming traffic; and, how to safely execute a left-hand turn.  Railo was never entrusted to drive a school bus without a certified 19-A instructor present until she was fully licensed by the State of New York, had completed her Pre-Service course of instruction and had demonstrated the ability to operate a school bus safely (Koselnak Affid., ¶¶ 6; Wells Affid.,¶ 3).  Railo also trained with an experienced "mentor driver" before driving students alone (Koselnak Affid., ¶ 7).

Once Railo was assigned her regular bus route, Route JJ, Ms. Wells trained her on that route.  Ms. Wells rode along with Railo and showed her all of the student bus stop locations.  Ms. Wells specifically trained Railo on how to safely execute the left-hand turn at the intersection of Peenpack Trail and Route 209, the exact location and direction of the accident (Wells Affid., ¶ 4).  Railo also began the New York State Education Department Basic Course of Instruction (30 hours of duration), but did not complete it, because the accident on February 14, 2013 occurred before the later portions of this course were held (Koselnak Affid., ¶ 8).  Quality's earnest efforts in training Railo disprove any claim that it was reckless or wantonly negligent by not training her and/or entrusting her with a school bus without adequate training. *Watson, supra*, 5 AD3d at 1068.

Quality also continued to supervise, monitor and evaluate Railo after she began driving, disproving any claim that it was culpable by not supervising her once she was hired. *Watson, supra*, 5 AD3d at 1068.  On December 3, 2012, Ms. Koselnak administered to Railo an Annual Defensive Driving Performance for Driver Under Article 19-A review; on December 18, 2012, an Article 19-A Biennial Behind the Wheel Road Test; and, on December 12, 2012, a Biennial Article 19-A Written Examination (Koselnak Affid., ¶¶ 9-12,

Exhibits B, C, and D). There was nothing in Railo's performance during those evaluations which demonstrated that she was unfit to operate a school bus; the issues identified during those evaluations were typical of a new school bus driver, for which Railo received additional training from Ms. Koselnak (Koselnak Affid., ¶¶ 10-11).

Quality also administered to Railo physical performance tests, the most recent of which was conducted on February 13, 2013, the day before the subject accident (Koselnak Affid., ¶¶ 13-14, Exhibits E and F). During those continuous evaluations, there was nothing in Railo's performance which served as warning or notice that she was unfit to operate a school bus (Koselnak Affid., ¶¶ 12-14, 27-28). The aforesaid continuing evaluations of Railo by Quality demonstrate that Quality acted in good faith in the continuing supervision, training and monitoring of Railo; and, there was no notice of any conduct or behavior by Railo which would have served as notice that she was unfit to operate a school bus.

Quality's earnest efforts in the hiring, training and supervision of Railo disprove any claim that it was wilfully indifferent or wantonly negligent. *Marcoux*, 283 F.Supp.2d at 908-909, 912. It is anticipated that the Plaintiff will challenge the sufficiency of Quality's efforts in an attempt to show that it was somehow negligent. However, any question of fact that the Plaintiff may raise with respect to the sufficiency of Quality's efforts, would only be probative as to ordinary negligence, and would not militate the denial of this Motion. Quality's good faith efforts in its hiring, training and supervision of Railo disprove that it acted with the requisite wilful indifference or was wantonly negligent, therefore, Quality's Motion for partial summary judgment dismissing the Plaintiff's punitive damages claims should be granted.

13

### *Quality Did Not Ratify or Condone Railo's Drug Use*:

Quality's Motion should be granted because it never ratified or condoned Railo operating a school bus while impaired by drugs. *See James*, 153 AD2d at 332. Quality made good faith efforts to ensure its drivers, including Railo, were not impaired by drugs. Railo was administered and passed a drug screening test as part of Quality's hiring process (Martucci Affid., ¶ 16, Exhibit E). She was also specifically advised of Quality's Policy prohibiting drug and/or alcohol use (Martucci Affid., ¶ 18; Koselnak Affid., ¶ 4-5; Railo Depo., p. 311). *Cf. James*, 153 AD2d at 332.

Quality had no notice of Railo's purported drug use. The day before the accident, Railo underwent a physical examination, during which she demonstrated the physical ability to do her job, and there was no indication of suspected drug use at that time (Koselnak Affid., ¶ 28). During her entire employment with Quality, there was never any indication that Railo was under the influence of or impaired by drugs, or otherwise unfit to operate a school bus (Martucci Affid., ¶¶ 22-23; Koselnak Affid,. ¶¶ 27-28; Wells Affid., ¶ 15).

Quality had no notice that Railo was driving the school bus while her ability to do so was impaired. The night before the accident, at approximately 8:00 or 9:00 PM, Railo took a Percocet pill (Railo Depo., p. 305). Railo was prescribed this medication by her physician, Dr. Koehler (Railo Depo., pp. 304-306), and took it well outside of the time period proscribed by New York State Vehicle and Traffic Law § 509-1-1.[2]   Notwithstanding Quality's Policy requiring its drivers notify it of new medications they are prescribed (Martucci Affid., ¶ 17), Railo never notified Quality that she was prescribed Percocet or

---

[2] New York State Vehicle and Traffic Law § 509-1-1, directs that school bus drivers are not to "consume a drug, controlled substance or an intoxicating liquor […] within six hours before going on duty or operating […] a bus."

obtained medical clearance to drive a bus from her doctor (Railo Depo., p. 311; Marcucci Affid., ¶ 24).  As such, Quality was without notice of Railo's prescription of Percocet (or any other medications which were not disclosed to Partners in Safety during her initial hire), and did not ratify or condone her driving a school bus while under the influence of or impaired by drugs (*James*, 153 AD2d at 332).

During her deposition, Railo claimed that the morning of February 14, 2013, she called Quality and told the secretary that she did not feel good, her body was sore, that she was in pain and had trouble sleeping the night before (Railo Depo., p. 209).  She did not want to drive a bus that day because she was uncomfortable and in pain (Railo Depo., pp. 354-355).  Railo claimed that Quality's secretary told her that there were no other drivers available to drive that route (Railo Depo., p. 210).  Railo also claimed that at some point before that day, she was told that she would be fired if she did not come into work (Railo Depo., pp. 210, 348-349).

Neither Mary Koselnak nor Karen Wells have any recollection of receiving a call from Railo the morning of February 14, 2013 (Koselnak Affid., ¶¶ 20-21; Wells Affid., ¶¶ 8-9).  Had Railo called-out sick on February 14, 2013, that would not have presented an issue because there were three (3) substitute bus drivers available on that day, in addition to the four (4) Quality office workers who were also licensed, ready and able to drive a school bus if needed (Martucci Affid., ¶ 1; Koselnak Affid., ¶ 22; Wells Affid., ¶ 10, Exhibit A).  At no time was Railo's employment threatened for being late or absent from work (Martucci Affid., ¶¶ 25-26; Koselnak Affid., ¶¶ 23-24; Wells Affid., ¶¶ 11-12).

Assuming *arguendo* that Railo did attempt to call-out sick on February 14, 2013, that phone call does not establish that Quality knew she had taken Percocet and was under the

15

influence of or impaired by drugs that afternoon. As detailed above, Railo never told Quality that she had taken Percocet the night before (Railo Depo., pp. 305, 311). Railo testified that she felt uncomfortable, however, the medications in her system did not adversely affect her ability to drive (Railo Depo., pp. 345, 346-347, 379, 387). The fact that Railo took a Percocet pill at 8:00 or 9:00 PM on February 13, 2013 (Railo Depo., p. 305), and purportedly attempted to call out sick around 5:30 AM on February 14, 2103 (Railo Depo., p. 347), does not establish that she was impaired by drugs at the time of the accident at approximately 2:36 PM that afternoon. More importantly, and determinative for this Motion, that phone call does not establish that Quality knew that Railo had taken any medications and that her ability to drive a school bus was impaired.

To the contrary, the evidence submitted herewith proves that Quality had no notice that Railo was impaired by drugs or otherwise unfit to drive. As mentioned earlier, the day before the accident, February 13, 2013, Ms. Koselnak administered a physical performance test to Railo, during which Railo did not appear to be under the influence of drugs or otherwise unfit to perform her duties as a bus driver (Koselnak Affid., ¶ 28, Exhibit F).

On February 14, 2013, Mary Koselnak and Karen Wells were dispatchers at Quality's Sparrowbush location (Koselnak Affid., ¶ 18; Wells Affid., ¶ 6). Both Ms. Koselnak and Ms. Wells previously received Reasonable Suspicion Supervisor training (Koselnak Affid., ¶ 17; Wells Affid., ¶ 5). Each time a driver, including Railo, came to either Ms. Koselnak or Ms. Wells to obtain school bus keys, they checked the driver's appearance and engaged the driver in conversation for the purpose of assessing their condition including any physical, behavior, speech or performance cues which may indicate that person may be under the influence of drugs and/or alcohol and/or not fit to operate a school bus. If there is any

16

suspicion that the driver may potentially be under the influence of drugs and/or alcohol (or unfit to drive a school bus for any other reason), they are not given the keys and one of the managers of Quality is alerted.  That driver does not drive a bus until further investigation is made including a drug and/or alcohol screening by a medical professional, and it is determined that he or she is fit to drive a school bus (Koselnak Affid., ¶¶ 18-19; Wells Affid., ¶¶ 6-7).

Railo arrived for work on February 14, 2013 (the day of the accident) at 6:00 AM (Railo Depo., p. 305).  Neither Ms. Koselnak nor Ms. Wells have a recollection of Railo coming to the depot to get school bus keys on February 14, 2013 before either the morning or afternoon routes.  However, if she had demonstrated any physical, behavioral, speech or performance cues indicative of alcohol and/or drug use at either of those times, Ms. Koselnak and/or Ms. Wells would have found that memorable and taken corresponding action including not giving her keys and referring her to a manager (Koselnak Affid., ¶ 25; Wells Affid., ¶ 13).  The fact that neither Ms. Koselnak nor Ms. Wells have a specific memory of Railo's appearance on February 14, 2013 before the accident, coupled with the fact that she was given keys, supports their conclusions that she was fit to operate a school bus and did not demonstrate any physical, behavioral, speech or performance cues indicative of alcohol and/or drug use at that time (Koselnak Affid., ¶ 26; Wells Affid., ¶ 14).

In-between her morning and afternoon routes, Railo did not tell anyone at Quality that she did not feel well (Railo Depo., pp. 302, 304).  She felt more tired in the morning than during the afternoon route (Railo Depo., p. 357).  When she returned to Quality for her afternoon route, she again had to check-in with one of the dispatchers, and did not appear to be under the influence of drugs (Koselnak Affid., ¶¶ 15, 25-26; Wells Affid., ¶¶ 13-14).

17

Railo testified that she felt was able to drive a bus, and did not feel impaired (Railo Depo., pp. 345, 346-347, 379, 387).

Following the accident, Ms. Koselnak sat with Railo at the Town of Deerpark Highway Barn break-room, and then the hospital. There was nothing in Railo's behavior following the accident which demonstrated to Ms. Koselnak any physical, behavioral, speech or performance cues indicative of alcohol or drug use during that time (Koselnak Affid., ¶ 30).

The fact that Railo never told Quality that she had taken Percocet, did not appear to be under the influence of or impaired by drugs during the day before the accident, or when she retrieved the school bus keys on February 14, 2013, is dispositive of whether Quality knew, or had reason to know, that she was impaired by drugs at the time of the accident. *Marcoux*, 283 F.Supp.2d 901. Because Quality did not know that Railo had taken Percocet (or any other drugs for that matter), it did not ratify or condone her driving a school bus while under the influence of or impaired by drugs. *James*, 153 AD2d at 332. Quality's motion should be granted because it did not know Railo was impaired by drugs, and therefore, did not ratify or condone her driving a school bus while impaired by drugs.

Quality's earnest efforts in the hiring, training and supervision of Railo disprove any claim that it was wilfully indifferent or wantonly negligent. *Marcoux*, 283 F.Supp.2d at 908-909, 912. Quality's lack of notice of Railo's purported drug use disproves any claim that it ratified or condoned her operating a school bus while her ability to do so was impaired by drugs. *James*, 153 AD2d at 332. Any question of fact raised by the Plaintiff regarding the sufficiency of Quality's efforts in the hiring, training or supervision of Railo, does not necessitate that this Court deny Quality's Motion – the fact that Quality undertook these

18

good faith efforts disproves that it acted with wilful indifference or was wantonly negligent. *Cf. Marcoux*, 283 F.Supp.2d at 908-909, 912; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (the materiality of the facts is determined by the substantive law governing the claims).

## THE PLAINTIFF'S CLAIMS FOR NEGLIGENT & CORPORATE LIABILITY, AND NEGLIGENT ENTRUSTMENT SHOULD ALSO BE DISMISSED.

The Plaintiff's claims for Negligence & Corporate Liability (Count III) and Negligent Entrustment (Count IV) are redundant with his Vicarious Liability claim (Count II), and are therefore, also subject to dismissal pursuant to Rule 12 (c). Those causes of action are lacking in merit where, as here, the employee is acting within the scope of her employment, thereby rendering the employer liable for damages caused by the employee's negligence under the theory of *respondeat superior*. *Watson*, 5 AD3d at 1068. While an exception exists to this general principle where the injured plaintiff is seeking punitive damages from the employer based on alleged gross negligence in the hiring or retention of the employee, where the claim for punitive damages is lacking in merit, the claims for negligent hiring and retention are subject to dismissal. *Id.* at 1068 (internal quotations and citations omitted).

Thus, if the Court dismisses the Plaintiff's claims for punitive damages, his claims for Negligence & Corporate Liability (Count III) and Negligent Entrustment (Count IV) are also subject to dismissal as a matter of law. *Id.* at 1068.

19

**CONCLUSION**

The defendant Quality Bus Service LLC respectfully requests an Order dismissing the Plaintiff's claims for punitive damages in the Second Amended Complaint, and dismissing the his claims for Negligence & Corporate Liability (Count III) and Negligent Entrustment (Count IV), together with such other and further relief as to this Court seems just and proper.

Dated: September 30, 2015

                                                 **MAYNARD, O'CONNOR, SMITH & CATALINOTTO, LLP**

                                                 Adam T. Mandell, Esq.
*[Bar Roll No. AM0612]*
Attorneys for the defendant
QUALITY BUS SERVICE, LLC
P.O. Box 180
Saugerties, New York 12477
(845) 246-3668
mandell@maynardoconnorlaw.com