IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUSTIN T. MAHER | Docket No. 12 CV 3586 (JCM) |
| Plaintiff | ANSWER TO RULE 56.1 STATEMENT BY QUALITY BUS SERVICE, LLC. |
| v. | |
| CAITLIN H. RAILO and QUALITY BUS SERVICE, LLC | (ECF Case) |
| | **Jury Trial Demanded** |
| Defendants | |

### ANSWER TO STATEMENT OF MATERIAL FACTS IN SUPPORT OF QUALITY BUS SERVICE, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, Justin T. Maher, by and through his attorneys, COGNETTI & CIMINI and FOULKE LAW OFFICES hereby answers Defendant Quality Bus Service, LLC's Rule 56.1 Statement of Material Facts as follows:

1.  Denied. Although Defendant Caitlin H. Railo (hereinafter "Railo") disclosed the identities of her employers for the preceding three (3) years prior to the date of her application, there is no evidence that any "investigation" into Railo's employment was performed.

2.  Denied. Although a copy of Railo's driving history is included in the employment file maintained by Quality Bus, there is no evidence that Mr. Martucci considered or evaluated the significance of Railo's traffic convictions or accidents for a minimum of three (3) years prior to the date of Railo's employment application. By way of further answer, as evidence that Mr. Martucci failed to properly consider or evaluate the significance of Railo's traffic convictions or motor vehicle accidents, the Article 19A employment application completed by Quality Bus and executed by Mr. Martucci, contains no traffic convictions or motor vehicle accidents.

1

3. Denied as stated. It is admitted that a copy of Railo's limited, three (3) year driving record is contained in Railo's personnel file maintained by Quality Bus. It is specifically denied that Mr. Martucci obtained a full or ten (10) year driving history relative to Railo.

4. Denied. It is specifically denied that Mr. Martucci took any affirmative steps to confirm that Railo had obtained a commercial driver's license with the necessary endorsements. By way of further answer, Railo reported the receipt of her commercial driver's license to representatives of Quality Bus Service.

5. Denied as stated. It is admitted that Railo received a commercial driver's license with the necessary endorsements to operate a school bus. It is specifically denied that said license evidences her eligibility under Federal and New York State Law to operate a commercial motor vehicle.

6. Denied as stated. It is admitted only that the New York State Department of Motor Vehicles, based upon information provided to it by Quality Bus, was unable to identify any disqualifying conviction.

7. Denied as stated. It is admitted that Partner's in Safety provided medical clearance for Railo to operate a school bus. It is specifically denied that Partner's in Safety made its determination based upon all available information provided by Railo.

8. Denied as stated. By way of further answer, Dr. Galli certified that Clonidine .1mg and Valium 10 mg would not affect Railo's ability to operate a commercial motor vehicle when taken "only during non-work hours." It is specifically denied that Partner's in Safety sought clearance from Dr. Galli for "all medications" disclosed to it by Railo.

9. Admitted. By way of further answer, Railo passed a limited panel pre-employment drug test administered by Partner's in Safety.

10. Denied. Railo disclosed her past drug use and current medications to the entity her employer contracted for medical clearances. Additionally, Railo never disclosed a history of drug abuse or Suboxone use in light of the fact that Quality Bus never inquired or requested such disclosure, either in its employment application or during the employment interview.

11. Denied. It is specifically denied that Quality Bus maintains any set policies or procedures. Rather, Quality Bus relies upon the procedures and recommendations from the NYS Pre-Service and Service Course Manuals.

12. Denied as stated. Railo was aware of an instruction obtained from the NYS Pre-Service and Service Course Materials. She had no recollection of any handbook, policy, or procedure allegedly issued by Defendant Quality Bus.

13. It is admitted that Mr. Martucci so stated. However, there is no documentation evidencing any random drug testing performed by Defendant Quality Bus.

14. Denied as stated. It is specifically denied that Mary Koselnak and Karen Wells train school bus drivers in accordance with the applicable New York State and Federal Motor Carrier regulations. By way of further answer, Mary Koselnak testified that she does not instruct drivers, inter alia, to bring their commercial vehicle to a stop prior to crossing a state highway, as required by 8 CRR-NY § 156.3. Moreover both Mary Koselnak and Karen Wells require driver's to violate 15 CRR-NY 6.23 under implied threat of termination of employment.

15. Denied. It is specifically denied that Mary Koselnak gave any instruction with respect to any purported Quality Bus policy relating to drugs and alcohol. It is similarly denied that the Pre-Service Course provided to Railo included instruction on drug and alcohol use, as Quality Bus decided not to include the optional pre-service course chapter relating to drug and alcohol use. By way of further answer, Ms. Koselnak testified during her deposition that, with

respect to instruction given during the pre-service course relative to drugs and alcohol "drinking and driving don't mix."

16.   Denied.  By way of further answer, Ms. Wells and Ms. Koselnak trained Railo such that she was unable to maintain proper attention, scan traffic, change lanes, yield the right of way, or limit conversation and other distractions while operating a school bus.

17.   Denied.  Railo testified during her deposition that when she received her commercial driver's license, she was given a route and did not have any "mentor driver" before she was permitted to transport students alone.

18.   Denied.  Ms. Koselnak testified that she trained Railo on Route JJ, and that she instructed her to slowly roll through the left hand turn onto Peenpack Trail at issue in this case so long as there was no oncoming traffic.

19.   Denied as stated.  Railo was unable to complete the Basic Course of Instruction because her employment with Quality Bus was terminated as a result of a positive post accident drug test.

20-23 inclusive.  Admitted.

24.   Denied.  It is specifically denied that Railo underwent a second physical performance test on February 13, 2013.  By way of further answer, Railo recalls undergoing one physical performance test during the course of her employment, and although she was unsure of the date on which she performed said test, it was completed prior to her first day operating a school bus.

25.   Denied.  Ms. Koselnak indicated that she only underwent "reasonable suspicion" training "years and years ago."  Furthermore, during his deposition, Mr. Martucci was unable to list even one potential symptom of impairment outside of a person "smelling like alcohol."  In

4

fact, he admitted that he had never personally identified potential drug or alcohol use by an employee, but rather, other supervisors had brought the concerns of "reasonable suspicion" to his attention and expected management.

26. Denied. Railo continually demonstrated performance cues indicative of CNS depressing substance abuse. By way of further answer, Quality Bus personnel were unable to identify the symptoms of CNS depressing substance abuse. This is evident based upon the affidavit of Karen Wells and the deposition testimony of Mary Koselnak, who indicate, in essence, they did observe anything "alarming" or outside of the norm with respect to Railo's behavior on the morning or afternoon of the subject February 14, 2014 motor vehicle accident. However, shortly thereafter, New York State Police officers were able to easily identify "constricted pupils," "droopy eyelids," and other signals which suggested Railo was under the influence of CNS depressing substances. Moreover, Railo failed a field sobriety test several house after the motor vehicle accident. She was also treated by her psychiatrist, Dr. Viviana Galli, who noted her disturbing concerns regarding Railo's appearance and behavior just prior to the February 14, 2013 motor vehicle accident.

27. Denied. Railo's performance evaluations and 19A examinations demonstrate that she was unfit to safely operate a school bus.

28. It is admitted Mary Koselnak and Karen Wells deny any recollection of Railo attempting to call off from work on the morning of February 14, 2013.

29. Denied. As Railo explained, substitute drivers are assigned their own runs, and when the driver for a route to which they are assigned as a substitute driver calls out of work, they are expected to take on two routes.

30.     Denied.  Railo provided Quality Bus with a doctor's note listing her medications on January 14, 2013.  Quality simply filed the excuse without bothering to fully read the note.

31.     Admitted.

32.     Denied as stated.  It is admitted that Mary Koselnak testified during her deposition that she was a dispatcher on the morning of February 14, 2014 with Karen wells.

33.     Denied.  It is denied that Mary Koselnak and Karen wells engage employees in morning conversation in order to assess their appearance and scan for performance cues indicative of substance abuse.  By way of further answer, according to the testimony of Mary Koselnak, the job of dispatcher is chaotic and very busy.  Two dispatchers are needed.  If an employee is unable to perform the route, Ms. Koselnak and Ms. Wells are inconvenienced by leaving the office short one dispatcher so that one of them can work the route.

34.     Admitted.

35.     Admitted in part. Denied in part.  It is admitted that Ms. Wells and Ms. Koselnak have executed Affidavits indicating they do not recall Railo's February 14, 2013 telephone call attempting to call off from work.  However, it is specifically denied that either Ms. Koselnak or Ms. Wells would notice and/or recall whether Railo demonstrated any performance cues indicative of substance abuse.

36.     Denied.  Evidence that Ms. Koselnak and Ms. Wells have no specific recollection of Railo's appearance on February 14, 2013, coupled with the fact that Railo was given the keys to operate a school bus, evidence the fact that Ms. Koselnak and Ms. Wells are unable to identify any performance cues indicative of impairment or substance abuse.

37.     Denied.  Railo told multiple co-worker and office personnel, continually throughout the day on February 14, 2013, that she was in pain and did not feel well.  Moreover, she complained that she was being required to work when she did not feel well.

38.     Denied as stated.  It is admitted that during her deposition Railo recalled that she was more tired during her morning route than the afternoon route.  However, immediately following and several months after the February 14, 2013 motor vehicle accident, when her memory was fresh, Ms. Railo recalled being fatigued during the afternoon route.

39.     Denied.  Railo admitted that she operated a commercial vehicle while impaired by the influence of morphine and other CNS depressing substances.

40.     Denied.  Ms. Koselnak was unable to identify any performance cues indicative of substance abuse.  However, both Railo's psychiatric, Dr. Viviana Galli, and investigating police officers, quickly determined that Railo was under the influence of CNS depressing substances.

> Respectfully Submitted,
> COGNETTI & CIMINI
>
>
> *s/ Vincent S. Cimini*
> Vincent S. Cimini, Esq. (ID # 60463)
> Counsel for Plaintiff
> Scranton Electric Bldg., 7th Floor
> 507 Linden Street
> Scranton, PA  18503
> 570-346-0745