IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUSTIN T. MAHER<br><br>        Plaintiff<br><br>v.<br><br>CAITLIN H. RAILO and<br>QUALITY BUS SERVICE, LLC<br><br>        Defendants | Docket No. 14 CV 3586 (JCM)<br><br>**ATTORNEY DECLARATION IN OPPOSITION TO QUALITY BUS SERVICE, LLC'S MOTIONS FOR SUMMARY JUDGMENT & JUDGMENT ON THE PLEADINGS**<br><br>**Jury Trial Demanded** |

  VINCENT S. CIMINI and SAL COGNETTI, JR. hereby declare, under penalties of perjury of the United States of America, pursuant to 28 U.S.C. §1746:

  1. Vincent S. Cimini is an attorney licensed to practice law in the Commonwealth of Pennsylvania, and was admitted to practice *pro hac vice* in the United States District Court for the Southern District of New York pursuant to Local Rule 1.3 on or about July 22, 2014.

  2. Sal Cognetti, Jr. is an attorney licensed to practice law in the Commonwealth of Pennsylvania, and was admitted to practice *pro hac vice* un the United States District Court for the Southern District of New York pursuant to Local Rule 1.3 on or about July 22, 2014.

  3. Vincent S. Cimini and Sal Cognetti, Jr., together with the FOULKE LAW OFFICES, represent Plaintiff Justin T. Maher in the present action.

  4. Vincent S. Cimini and Sal Cognetti, Jr. submit the instant Declaration in opposition to Defendant Quality Bus Service, LLC's motions for summary judgment and judgment on the pleadings with respect to Plaintiff's claims for corporate negligence, negligent entrustment, and punitive damages.

1

5. Annexed to this Declaration are true and correct copies of the following documents:

| | |
|---|---|
| Exhibit 1: | Police Investigation Report and Accident Report |
| Exhibit 2: | Optional Pre-Service Course Chapter on Drugs & Alcohol |
| Exhibit 3: | Employee Weekly Attendance Reports |
| Exhibit 4: | Onboard Video (School Bus Interior) |
| Exhibit 5: | Caitlin Railo's Criminal Proceeding Record (02/14/13 MVA Charges) |
| Exhibit 6: | Transcript of Caitlin Railo's Guilty Plea |
| Exhibit 7: | Plainitff's Second Amended Complaint |
| Exhibit 8: | Deposition Transcript of Michael Martucci |
| Exhibit 9: | (A) QBS Employee Handbook  (B) QBS Employee Handbook by Paychex |
| Exhibit 10: | Deposition Transcript of Caitlin Railo (03/26/15) |
| Exhibit 11: | Deposition Transcript of Caitlin Railo (04/13/15) |
| Exhibit 12: | Transportation Contract between Quality Bus and Port Jervis School District |
| Exhibit 13: | Hiring & Intake Manual |
| Exhibit 14: | Caitlin Railo's Employment Application to Quality Bus Service, LLC |
| Exhibit 15: | Records of Caitlin Railo's criminal history, including arrests |
| Exhibit 16: | Commercial Vehicle Safety Expert Report of  Walter A. Guntharp |
| Exhibit 17: | Caitlin Railo's Written Personal References |
| Exhibit 18: | Deposition Transcript of Mary Koselnak |
| Exhibit 19: | Current 19-A Application for School Bus Driver |
| Exhibit 20: | Caitlin Railo's 19-A Application for School Bus Driver |
| Exhibit 21: | Caitlin Railo's Limited Driving History Requested by Quality Bus |

Exhibit 22:   Caitlin Railo's Medical Examination Report by Partner's In Safety

Exhibit 23:   Pre-Service Course Instructor Guide

Exhibit 24:   Driver's Daily Reports

Exhibit 25:   Pre-Service Course Sign In

Exhibit 26:   Carrier's Annual Review of Employee's Driving Record Under 19-A

Exhibit 27:   Report on Annual Defensive Driving Performance Under Article 19-A

Exhibit 28:   Article 19-A Biennial Behind the Wheel Road Test

Exhibit 29:   Physical Performance Tests

Exhibit 30:   Medical Records of Dr. Viviana Galli

Exhibit 31:   Pharmaceutical Medical Records

Exhibit 32:   Medical Records from Crystal Run Healthcare

Exhibit 33:   01/14/2013 Doctor's Note

Exhibit 34:   Daily Workboard

Exhibit 35:   Toxicology Expert Report of Richard Stripp, Ph.D.

Exhibit 36:   Accident Reconstruction Accident Report of William J. Martin

Exhibit 37:   Biomechanical Expert Report of Terrence J. Fischer

Exhibit 38:   Forensic Vehicle Examination Expert Report of Peter Scalia

Exhibit 39:   19-A Driver Activation Receipt

Exhibit 40:   Final Qualification Notice

Exhibit 41:   Quality Bus Service Incident/Accident Report

Exhibit 42:   Correspondence by Quality Bus Service to Caitlin Railo

6. The Police Investigation Report (Exhibit "1") provides information regarding the course of the investigation performed by the New York State Police relative to the February 14, 2013 motor vehicle accident. Pertinent to Plaintiff's Opposition, Exhibit "1" demonstrates:

a. Railo had constricted pupils and droopy eyelids when she provided a statement to Officer Timothy Dymond at Bon Secours Community Hospital where she was being treated for accident related injuries. (18)

b. Officer Timothy Dymond requested that Railo perform standard field sobriety testing, which she failed. (18)

c. Railo was evaluated by New York State Police Drug Recognition Expert, Jason Vidocavich, and was found to be positive for CNS depressant. (18)

d. It is obvious from a review of video secured from the inside of the bus that Railo "does not stop prior to making her turn onto Peenpack Trail" as she had indicated she had stopped during her initial interview at Bon Secours Community Hospital. (18)

e. The video shows Railo "engaged in conversation with the child passenger and rolls into the turn and strikes an oncoming vehicle." (18-19)

f. Mr. Martucci advised the NYSP that Railo's DOT drug testing came back positive for opiates. (19)

g. Blood testing results by the NYSP Crime Lab revealed that Caitlin had Diazepam and Morphine in her blood the day of the collision. (19)

h. Caitlin was interviewed by Timothy Dymond a second time, on April 13, 2013. At that time she "advised in sum and substance that she had taken a 200mg Morphine pill shortly after midnight on the day of the accident. She advised that

4

        she took the pill because she ran out of Suboxone [prescription opioid dependence medication] and would get sick without it. She also advised that she should not have been driving the bus but her boss would not let her take a day off because no one else knew her route. . ." (19)

i.     On February 14, 2013, Railo provided a statement to the police in which she stated "[t]he medications I took today are: Clonidine .01mg, one tablet at 9:45 A.M. Valium 5mg 1 tablet at 9:45 AM. Yesterday I took Percocet 7.5mg 2 tablets at about 8 PM and a half an Ambien 10mg ½ tablet at 8 PM. I also take Suboxone 8mg in the morning and 2mg before bed but I haven't had it since last week." (24)

j.     Railo's April 12, 2013 Statement to the New York State Police was transcribed, in relevant part, as follows:

Do you know why you are here today?
Unfortunately yes. For the bus accident I had dirty blood.

Why was your blood test positive for morphine and Diazepam?
I am prescribed valium by Dr. Galli do that is why Diazepam came up. I ran out of Suboxone the two days before the accident. I did not go to my doctor and get a refill and I was not allowed to call out of work. I had to work. I took a 200mg Morphine pill. It is . . . and oblong says 200 on one side. The pill is time released.

When did you take the pill on February 13, 2013?
12am on the 14th actually.

(25)

k.     Caitlin Railo initialed each page of the April 12, 2013 transcribed statement. (24-26.)

5

7. Weekly Attendance Reports (Exhibit 3) demonstrate that Railo was late to work on January 3, 2013; January 9, 2013; January 14, 2013; January 15, 2013; January 17, 2013; January 18, 2013; January 22, 2013; and January 28, 2013.

8. Onboard video surveillance (Exhibit 4) taken at the time of the accident demonstrates that Railo was engaged in continuous conversation with the student she was transporting at the time of the February 14, 2013 motor vehicle accident. The video also demonstrates Caitlin Railo's slow, slurred speech.

9. The Quality Bus Service Employee Handbook (Exhibit 9A) provides

a. employees must be examined by a company designated physician

b. when reporting absent, employees must call at least one hour before their scheduled route.

c. it is frequently difficult to get substitute drivers.

d. Quality Bus considers driving while intoxicated, leaving the scene of an accident, license suspension/revocation for any reason, and reckless driving to be serious offenses.

e. Any driver who is more than 15 minutes late is required to complete an Acknowledgement of Additional Hours.

f. If a driver fails to disclose and violations or vehicle traffic convictions within five (5) days of their occurrence is subject to a 5 day suspension.

10. The Quality Bus Employee Handbook by Paychex (Exhibit 9B), provides:

a. upon being hired, an employee must read the employee hand book and return a signed receipt for handbook.

    b.      employees are advised to schedule doctor's appointments outside of working hours;

    c.      disciplinary action is implemented with an oral warning, then a written warning, then a suspension, and then discharge.

11.    The transcript of Caitlin Railo's Guilty Plea (Exhibit 6) evidences that Railo admitted to having consumed Morphine and Diazepam, and that those medications impaired her ability to safely operate a school bus.

12.    The Transportation Contract between Quality Bus and the Port Jervis School District (Exhibit 12) evidences that school bus drivers were required to provide personal references from individuals who were not related to them prior to driving a school bus for the Port Jervis School District.

13.    The Hiring and Intake Manual (Exhibit 13) provides that

    a.      applicants for employment as a school bus driver for Quality Bus must complete Quality Bus's employment application.

    b.      A minimum of three years driving history is obtained with respect to each applicant.

    c.      10 years of employment and/or educational history are required as part of Quality Bus' criminal clearance.

    d.      Employees are subject to pre-employment, reasonable suspicion, and random drug testing.

    e.      New drivers are assigned a mentor driver, to accompany on "live routes" for several days. *"The duration of training required will vary for each new employee depending on prior experience and skill level."*

    f.      new hire employee evaluations are conducted after 30 and 90 days of employment based upon Quality Bus's "employee evaluation template.

14. On Railo's employment application to Quality Bus (Exhibit 14), Railo voluntarily disclosed a 2010 rear end motor vehicle accident, a 2012 speeding ticket, and a 2012 citation for "parking on pavement. Quality Bus's employment application does not require an applicant to provide any criminal history outside of traffic violations.

15. Records of Railo's criminal history (Exhibit 15) reveal that Railo had an extensive arrest and conviction record featuring driving without insurance, criminal possession of a controlled substance (cocaine), criminal possession of a controlled substance/drug paraphernalia (hypodermic needle and heroin), bail jumping, petit larceny, endangering the welfare of a child, failure to stop at a stop sign, reckless driving, leaving the scene of a personal injury accident, driving while impaired, and disorderly conduct.

16. Walter A. Guntharp, Jr., a commercial vehicle safety expert, provided a report (Exhibit 16) based upon his evaluations of both the actions of Railo and the corporate policies and conduct Quality Bus on behalf of Plaintiff. Regarding the actions of Railo, Mr. Guntharp concluded that

   a. "Ms. Caitlin Railo knowingly and intentionally concealed her medical, criminal, and unsafe driving history in order to obtain a driving position with Quality. Once hired, she routinely drive a large school bus while under the influence of drugs that affected her ability to operate safely. Finally, on the date of the collision, Ms. Railo, despite knowing that she was unfit to operate a bus, ran her routes at the expense of public safety. The actions of Ms. Railo, both prior to driving that day and at the time of the collision were direct causes of the injuries to Mr. Maher." (12)

   b. With respect to the corporate responsibilities of Quality Bus, Mr. Guntharp concluded that Quality Bus was "on notice that Ms. Railo was operating her school bus while under the influence of controlled substances based upon her disclosures during a medical

evaluation which, by industry standard, should have prompted further investigation." (12).

c. Had Quality Bus Service, LLC performed a criminal background investigation as required by industry practices, they would have discovered that Ms. Railo had a significant criminal history, including but not limited to arrests and convictions for leaving the scene of an accident, drug related offenses, and child endangerment. This history of arrests should have immediately disqualified Ms. Railo from any consideration for employment.

d. Quality Bus Service, LLC was on notice that Ms. Railo had not demonstrated a "good moral character" upon her failed attempt to conceal criminal and traffic proceedings, driver's license suspensions, and her true medical conditions during the hiring process.

e. Ms. Railo was unqualified to operate a school bus for multiple reasons, but was hired as a driver as a direct result of Quality Bus' flawed hiring and screening practices. (8).

f. Quality Bus failed to investigate Ms. Railo's employment history, driving history, and criminal history. (8). Mr. Guntharp noted that Quality Bus' employment application and hiring procedures fail to meet the requirements of both Federal and New York State Motor Carrier Safety Regulations. (8).

g. Quality Bus similarly failed to adhere to Federal and New York State Regulations relating to driver training and supervision. (11)

h. Mr. Guntharp noted that "Ms. Railo was admonished for talking to the students too much and not "observing" or focusing on her driving tasks. At the time of this collision, video records from the bus revealed that Ms. Railo was exhibiting the same behavior . . . Quality could have been using the video records to monitor Ms. Railo and ensure that she had modified her behavior in response to the company documented observation. . . However there are no records that indicate any such steps were taken." (11)

      i.      In violation of New York State Regulations, "Ms. Railo was not instructed to bring her school bus to a complete stop at the intersection of State Route 209 and Peenpack Trail. Rather, Ms. Railo was trained to 'slow up to check for oncoming traffic and then proceed." (11)

      j.      Root cause analysis (RCA) shows that "the need for Ms. Railo's services caused Quality to require her to drive that day [February 14, 2013] despite the fact that she had notified them that she was sick and did not want to drive. Quality knew or should have known that a driver's ability to operate safely can be affected by physical distress associated with being sick." (12)

      k.      "Had Quality Bus Service, LLC or Caitlin Railo acted in a safe, responsible manner and following industry expectations for safe operation, this collision would not have occurred." (12)

17.     Defendants have not produced the report of any rebuttal commercial vehicle safety expert.

18.     Railo's personal references (Exhibit 17) were provided by her mother, her husband, and a friend.

19.     The Current 19-A Application for School Bus Drivers (Exhibit 19) requires that the original completed form be produced to the NYS Department of Motor Vehicle Bus Driver Certification Unit.

20.     The 19-A Application completed on behalf of Railo (Exhibit 20) also requires that the original document be produced to the NYS Department of Motor Vehicle Bus Driver Certification Unit. The application is inaccurate as it does not list any criminal convictions or motor vehicle accidents.

21. The limited Driving History (Exhibit 21) record obtained by Quality Bus regarding Railo disclosed a series of suspensions and revocations, as well as repeated instances where Railo surrendered her license to the State of New York.

22. Railo's Medical Examination Report (Exhibit 22) does not disclose any seizures, head injury, high blood pressure, nervous or psychiatric disorders, sleep disorders, or narcotic or habit forming drug use. Dr. Viviana Galli and Dr. Khoeler are identified as Railo's treating physicians. The only medications contained on the form are Clonidine and Diazepam. The examination was not approved by a licensed physician.

23. The Pre-Service Course Instructor Guide provides details on the specifics of training from an instructor's perspective. The mandatory pre-service course topics include key responsibilities of school bus drivers, student management, bus stop safety, students with special needs, and emergency preparedness. (7). Drugs and alcohol are covered under an "optional" unit which Quality Bus did not incorporate into its pre-service course.

24. Driver's Daily Reports (Exhibit 24) demonstrate that Railo first began driving transporting students the day she received her CDL license, and prior to the date she underwent the Physical Performance Test and the Pre-Service Course.

25. The Pre-Service Course sign-in (Exhibit 25) evidences that Railo attended the Pre-Service Course on November 6, 2012.

26. The Carriers Annual Review of Employee's Driving Record under Article 19-A (Exhibit 26) discloses an August 8, 2012 violation for disobeying a traffic control device.

27. On the Report on Annual Defensive Driving Performance (Exhibit 27), Railo's procedures for receiving and discharging passengers was unsatisfactory. Her performance at

traffic intersections was also unsatisfactory.  Mary Koselnak wrote too much unnecessary conversation with students. . . be more observant . . .car has right of way. . ."

28. 19A Behind the Wheel Road Test (Exhibit 28) evidences Railo's inability to properly safely navigate through traffic in a commercial motor vehicle.

29. Physical Performance Tests (Exhibit 29) demonstrate that Railo purportedly underwent physical fitness testing on November 6, 2012, and February 13, 2013.

30. 01/14/13 doctor's note (Exhibit 33) demonstrates that Quality Bus had notice Railo was taking narcotic prescription pain medication, Percocet.

31. The Daily Workboard (Exhibit 34) maintained by Quality Bus evidences that Railo was a no show for work on January 9, 2013 and January 30, 2013 and was suspended by Quality Bus on January 31, 2013. (31, 45-46)

32. In the Final Qualification Notice (Exhibit "40") Mr. Martucci, on behalf of Quality Bus certified that Railo was qualified pursuant to Article 19-A to commence employment as a school bus driver.

33. The above-specifically outlined exhibits, together with all exhibits submitted for consideration by this Honorable Court, establish numerous genuine issues of material fact warranting consideration by a jury.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court deny Defendant Quality Bus's motions to summary judgment and judgment on the pleading, and enter decision in Plaintiff's favor.

Respectfully submitted,
**COGNETTI & CIMINI**

*[signature]*

**VINCENT S. CIMINI, ESQUIRE**
**Atty. ID No. 60463**

*[signature]*

**SAL COGNETTI, JR. ESQUIRE**
**Atty. ID No. 17269**

**Counsel for Plaintiff, Justin T. Maher**
**Scranton Electric Bldg., 7th Floor**
**507 Linden Street**
**Scranton, Pa 18503**
**(570) 346-0745**