UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

JUSTIN T. MAHER,

                      Plaintiff,

    -against-

CAITLIN H. RAILO and QUALITY BUS
SERVICE, LLC,

                      Defendants.
---------------------------------------------------------------X

**OPINION AND ORDER**

14 Civ. 3586 (JCM)

In this action, Plaintiff Justin T. Maher ("Plaintiff") sought to recover damages for personal injuries he allegedly sustained as a result of a motor vehicle accident that occurred on February 14, 2013, when Plaintiff's vehicle was struck by a bus that was operated by Defendant Caitlin H. Railo ("Ms. Railo") and owned by Defendant Quality Bus Service, LLC ("QBS") (together, "Defendants"). The parties settled the case, and, on December 8, 2015, the Court entered a Stipulation of Settlement, Discontinuance and Order of Dismissal.[1] (Docket No. 119). On December 6, 2016, Plaintiff's counsel of record, Cognetti & Cimini, LLC ("C&C"), sought and obtained an order to show cause regarding whether the Court should accept ancillary jurisdiction over an attorneys' fee dispute between C&C and Plaintiff's former counsel, Gary Greenwald & Partners, P.C. ("GG&P").[2] (Docket No. 120). At the show cause hearing held on December 13, 2016, the Court accepted ancillary jurisdiction with the consent of all parties. Presently before the Court is a motion filed by GG&P seeking reimbursement from C&C of

---

[1] This action is before this Court for all purposes on the consent of the parties, pursuant to 28 U.S.C. § 636(c). (Docket No. 22).

[2] Gary Greenwald & Partners, P.C., is the successor-in-interest to Greenwald Law Offices, the law firm retained by Plaintiff. (Docket No. 137 ¶ 1; Docket No. 137-7). For simplicity, the Court refers to GG&P without distinguishing between Gary Greenwald & Partners, P.C., and Greenwald Law Offices.

1

certain litigation costs advanced by GG&P, a percentage of the contingency fee received by C&C from the settlement proceeds, and interest. (Docket No. 136). On August 3, 2017, the Court heard oral argument on the motion. For the reasons set forth below, GG&P's motion is granted in part and denied in part. The Court finds that GG&P is entitled to (1) reimbursement of litigation costs advanced by GG&P in the amount of $10,238.69, (2) five percent of the contingency fee received by C&C from the settlement of Plaintiff's claims, and (3) interest running from November 30, 2015 at a rate of nine percent per annum.

## I. BACKGROUND

The factual and procedural history of this case is complex and largely immaterial to the present fee dispute. The following is a summary of the relevant history based on the declarations and other documents submitted in support of and opposition to GG&P's motion, as well as the Court's familiarity with the prior proceedings in this case.[3]

On February 14, 2013, Plaintiff was involved in a motor vehicle accident in Orange County, New York, sustained serious head injuries, and was placed in a medically-induced coma for nearly a month. (Docket No. 137 ¶ 12; Docket No. 141 ¶¶ 5–6).[4] On February 16, 2013, Plaintiff's biological father, Edward Maher, consulted with C&C and entered into a Contingent Fee Agreement, ostensibly on Plaintiff's behalf, requesting that C&C investigate the

---

[3] The Court has reviewed and considered, among other things, the Declaration of David A. Brodsky, dated May 19, 2017, and the exhibits attached thereto (Docket Nos. 137 through 137-18); the Declaration of Vincent S. Crimini, Esq., dated June 30, 2017, and the exhibits attached thereto (Docket Nos. 141 through 141-25); the Declaration of Evan M. Foulke, dated June 30, 2017, and the exhibits attached thereto (Docket Nos. 142 through 142-17); the Declaration of Michael E. Catalinotto, Jr., dated June 29, 2017, and the exhibits attached thereto (Docket Nos. 143 through 143-8); the Declaration of Keith V. LaRose dated June 29, 2017, and the exhibits attached thereto (Docket Nos. 144 through 144-8); the Reply Declaration of David A. Brodsky, dated July 14, 2017, and the exhibits attached thereto (Docket Nos. 151 through 151-23); and the Reply Declaration of David Aikman, dated July 14, 2017, and the exhibits attached thereto (Docket Nos. 152 through 152-2).

[4] The facts asserted in the voluminous declarations, exhibits and other papers submitted in support of and opposition to GG&P's motion are largely undisputed and frequently redundant. Thus, for convenience, the Court does not cite every exhibit or declaration relevant to each fact except where deemed necessary.

circumstances surrounding the accident and pursue an appropriate civil action to recover for Plaintiff's accident-related injuries. (Docket No. 141 ¶¶ 7–8; Docket No. 141-3). Pursuant to the Contingent Fee Agreement, C&C undertook representation of Plaintiff by retaining the services of investigators and accident reconstruction experts to obtain witness statements and perform site and vehicle inspections. (Docket No. 141 ¶ 9).

On February 20, 2013, while Plaintiff remained in a coma, Plaintiff's maternal grandparents, William and Christine Eveleth, executed a written retainer agreement to retain GG&P for purposes of pursing a lawsuit in the Supreme Court of the State of New York arising from the injuries sustained by Plaintiff. (Docket No. 137 ¶ 15; Docket No. 137-6). After being retained, GG&P began investigating the accident, obtaining medical records, and negotiating with insurance companies. (Docket No. 137 ¶ 17).

On February 27, 2013, GG&P initiated a proceeding pursuant to Article 81 of the New York Mental Hygiene Law in the Orange County Surrogate's Court and petitioned to have Plaintiff's grandfather, William Eveleth, appointed as Plaintiff's guardian. (Docket No. 141 ¶ 11; Docket No. 137 ¶ 13; Docket No. 137-4). As a result of the Article 81 proceeding, William Eveleth was appointed as Plaintiff's temporary guardian pending a hearing on GG&P's application scheduled to take place on April 5, 2013. (Docket No. 141 ¶ 12). C&C acknowledged the temporary guardianship in correspondence to GG&P dated March 6, 2013. (Docket No. 141 ¶ 13; Docket No. 141-6).

On March 11, 2013, shortly after Plaintiff emerged from his coma, GG&P obtained Plaintiff's mark and/or initials upon (1) a Contingent Fee Agreement; (2) an "acknowledgement" that GG&P's fees and costs incurred in connection with the February 27, 2013 Article 81 proceeding would be asserted as a lien against Plaintiff's recovery in his litigation for personal

injuries; and (3) a pre-typed letter addressed to Vincent S. Cimini, who served as lead counsel from C&C in this matter, advising: "I am no longer in a coma . . . I am most satisfied with the Greenwald Law Offices representing me. Please do not do any work on my behalf." (Docket No. 141 ¶¶ 3, 15; Docket No. 137 ¶ 16; Docket No. 141-7).

By correspondence dated March 19, 2013, Gary Greenwald of GG&P forwarded a copy of the termination letter to Vincent S. Cimini of C&C and advised:

> I am so incredibly troubled by your obvious stupidity. . . . I have in my possession a retainer signed by the lawfully appointed guardian of Justin Maher. In addition, now that Mr. Maher is out of the coma, he has signed a retainer with me in the presence of his grandparents. He has also signed a letter that was written to you to stop having any involvement in this matter.

(Docket No. 141 ¶ 16; Docket No. 141-8).

On April 15, 2013, GG&P served a four-page Notice of Claim by Plaintiff against Port Jervis City School District at the Port Jervis School District Superintendent's Office. (Docket No. 143 ¶ 5; Docket No. 143-1). On June 12, 2013, Jamie C. Greenwald, Esq., of GG&P participated in Plaintiff's pre-litigation deposition pursuant to New York General Municipal Law § 50-h. (Docket No. 143 ¶ 6; Docket No. 143-2).

On June 28, 2013, GG&P commenced a lawsuit for Plaintiff's injuries by filing a Summons and Complaint against Ms. Railo, QBS, Port Jervis City School District, and New Life Christian Day School in the Supreme Court of the State of New York (the "State Court Action"). (Docket No. 137 ¶ 17; Docket No. 137-8). GG&P has submitted contemporaneous time records, which, according to GG&P, document work performed by GG&P in connection with the State Court Action. (Docket No. 137-11; Docket No. 137 ¶ 23). According to those records, GG&P devoted approximately 107 hours of attorney and paralegal time in furtherance of the State Court Action. (Docket No. 137-11 at 13). That work amounted to $33,235.25 in billable fees, based on

4

the rates reflected in the time records. (*Id.*). According to the records, GG&P also incurred $10,623.69 in out-of-pocket expenses in furtherance of the State Court Action. (Docket No. 137-11 at 18).

GG&P has submitted a declaration describing the work performed by GG&P in connection with the State Court Action. (*See* Docket No. 137 ¶ 23). Among other things, between July 3, 2013 and July 18, 2013, GG&P filed affidavits of service reflecting completed service of process on the defendants in the State Court Action. (Docket No. 143 ¶ 8; Docket No. 143-4). On August 21, 2013, Defendant New Life Christian Day School filed a motion to dismiss Plaintiff's complaint in the State Court Action. (Docket No. 143 ¶ 9; Docket No. 143-5). Between August 21, 2013 and September 12, 2013, in opposition to New Life Christian Day School's motion to dismiss, GG&P submitted a brief response arguing that the motion was premature, followed by a two-page sur-reply seeking to clarify a factual inaccuracy. (Docket No. 143 ¶ 10). GG&P did not serve discovery responses in the State Court Action. (Docket No. 143 ¶ 18; Docket No. 144 ¶ 17).

Michael E. Catalinotto, Jr., counsel to QBS, provided a declaration asserting, among other things, that GG&P approached settlement of Plaintiff's claim by insisting "liability is clear" and soliciting settlement offers without addressing or resolving various complex factual and legal issues. (Docket No. 143 ¶¶ 23–24). According to Mr. Catalinotto, the State Court Action was never close to settlement. (*Id.* ¶ 19). Similarly, Keith V. LaRose, counsel to Ms. Railo, provided a declaration asserting that the State Court Action was never close to settlement. (Docket No. 144 ¶ 16).

In late September of 2013, Plaintiff contacted C&C to express his dissatisfaction with GG&P's representation and to retain C&C. (Docket No. 141 ¶ 28). At that time, C&C

communicated that so long as GG&P represented Plaintiff, C&C would not take any legal action on Plaintiff's behalf. (Docket No. 141 ¶ 28). On October 10, 2013, Plaintiff, together with his wife, Angel Maher, and their son, appeared at the law offices of C&C, advising that Plaintiff had terminated his relationship with GG&P in writing by facsimile. (Docket No. 141 ¶ 29; Docket No. 141-13). Plaintiff and his wife requested that C&C represent Plaintiff in an action to recover for his personal injuries. (Docket No. 141 ¶ 29). That same day, Plaintiff entered into a Contingent Fee Agreement with C&C. (Docket No. 141 ¶ 30; Docket No. 141-14).

Thereafter, C&C retained Evan M. Foulke, Esq., and the Foulke Law Firm ("FLF") as local counsel to effect a change in counsel and discontinuance of the State Court Action. (Docket No. 141 ¶ 34). On October 17, 2013, FLF filed a Consent to Change Attorney and Notice of Voluntary Discontinuance. (Docket No. 141 ¶ 34). GG&P objected to C&C's efforts to replace GG&P as Plaintiff's counsel. (Docket No. 137 ¶ 26). On October 28, 2013, FLF applied for and secured an Order to Show Cause, returnable November 25, 2013, requiring GG&P to show cause why it should not be discharged. (Docket No. 141 ¶ 36; *see also* Docket No. 142-13 at 6).

In response, on November 18, 2013, GG&P commenced a second Article 81 proceeding in the Orange County Surrogate's Court, alleging that Plaintiff was incapacitated and again seeking appointment of William Eveleth as Plaintiff's guardian. (Docket No. 141 ¶ 37; Docket No. 141-16). GG&P also requested that determination of Plaintiff's application to discharge GG&P be stayed pending resolution of GG&P's second Article 81 proceeding. (Docket No. 141 ¶ 38). On November 19, 2013, the Honorable Paul I. Marx held a hearing on Plaintiff's application to discharge GG&P. (Docket No. 141 ¶ 39). At the hearing, Judge Marx stayed Plaintiff's discharge application pending resolution of the Article 81 proceeding, which was pending in the Surrogate's Court. (*Id.*). However, Judge Marx also stayed GG&P from

continuing to act in any capacity on Plaintiff's behalf and from continuing to prosecute his underlying case. (*Id.*).

On January 31, 2014, the Honorable Robert A. Onofry dismissed the Article 81 proceeding. (Docket No. 141 ¶ 45; Docket No. 141-18).  On April 30, 2014, the Honorable John P. Colangelo issued an Order discharging GG&P as counsel and substituting FLF as counsel for Plaintiff in the State Court Action, specifically noting that "such relief and substitution is without prejudice to any rights that Greenwald Law Offices has or may have pursuant to § 475 of the Judiciary Law." (Docket No. 141 ¶ 46; Docket No. 141-19).  On September 10, 2014, Judge Colangelo issued an Order denying GG&P's application for leave to renew its earlier application to establish an attorneys' charging lien. (Docket No. 142 ¶ 37).

By motion dated May 19, 2014, FLF, acting on behalf of Plaintiff, moved to voluntarily discontinue the State Court Action. (Docket No. 141 ¶ 47).  That same day, FLF and C&C commenced this action by filing a complaint on behalf of Plaintiff. (Docket No. 1).  Defendants contested both liability and the extent of Plaintiff's injuries and damages by raising numerous factual and legal issues. (Docket No. 141 ¶ 49; Docket No. 143 ¶ 20; Docket No. 144 ¶ 18).  Due to the factual and legal issues in dispute, Plaintiff's personal injury action was complex and required a significant commitment of C&C's and FLF's time and resources, including (1) retention and coordination of nine experts; (2) responses and objections to numerous document requests, interrogatories, and requests for medical authorizations; (3) drafting and serving of interrogatories and document requests; (4) preparation for and attendance at numerous depositions; (4) drafting a 73-page opposition to QBS's motion for summary judgment and a 41-page opposition to Ms. Railo's motion for summary judgment; and (5) attendance at

numerous court conferences regarding discovery and case management. (Docket No. 141 ¶ 50; Docket No. 142 ¶ 46).

Because it was working on a contingency fee basis, C&C did not maintain contemporaneous billing records; however, C&C has subsequently prepared and submitted a document that C&C describes as "a very conservative time record outlining the dedication of C&C time and resources." (Docket No. 141 ¶ 51; Docket No. 141-4). That record indicates that C&C spent approximately 587 hours in connection with its representation of Plaintiff in this action.[5] (Docket No. 141-4; *see also* Docket No. 151 ¶ 33). C&C asserts that the time record does not include at least 1,500 hours expended by C&C's attorneys to coordinate Plaintiff's case and participate in telephone conferences with Plaintiff, defense counsel, mediators and experts. (Docket No. 141 ¶ 53). In addition, FLF submitted contemporaneous billing records, which indicate that FLF devoted 589.3 hours to its representation of Plaintiff. (Docket No. 142-17).

During a conference conducted on November 4, 2015, the parties notified the Court that they had reached a settlement. C&C and FLF, as well as counsel for Ms. Railo and counsel for QBS, all assert that "[t]he substantial settlement ultimately achieved in the present action was accomplished solely through the dedicated efforts of Cognetti & Cimini, Foulke Law Firm, Maynard, O'Connor, Smith & Catalino, LLP, and LaRose & LaRose, Esqs." (Docket No. 141 ¶ 67; Docket No. 142 ¶ 50; Docket No. 143 ¶ 22; Docket No. 144 ¶ 24).

GG&P appealed Judge Colangelo's April 30, 2014 and September 10, 2014 Orders. (Docket No. 142 ¶ 37). By Decision and Order dated November 23, 2016, the Appellate Division of the Supreme Court of the State of New York, Second Judicial Department, issued a

---

[5] The document contains the figure "10809.91" adjacent to the label "Total Hours." (Docket No. 141-4 at 23). At the oral argument conducted on August 3, 2017, C&C clarified that this figure was a mistake based on a miscalculation and the correct sum is approximately 587.

Decision and Order holding, among other things, that GG&P was entitled to retaining and charging liens on the proceeds of Plaintiff's personal injury cause of action. *See Maher v. Quality Bus Serv., LLC*, 42 N.Y.S.3d 43, 46 (2d Dep't 2016). At a hearing on December 13, 2016, with the consent of all parties, this Court accepted ancillary jurisdiction over the instant fee dispute. Thereafter, GG&P and C&C submitted briefs and supporting papers on GG&P's motion.

## II. DISCUSSION

The Court addresses, in turn, GG&P's requests for costs, fees and interest.

### A. Costs

The Appellate Division of the Supreme Court of the State of New York, Second Judicial Department, has ruled that GG&P has a lien on the proceeds of Plaintiff's personal injury cause of action, "with the litigation costs advanced by [GG&P] to be paid either by incoming counsel or by the plaintiff directly." *Maher*, 42 N.Y.S.3d at 46. GG&P seeks reimbursement of costs in the amount of $10,623.69. (Docket No. 138 at 5). According to the billing records submitted by GG&P, those costs relate to a vocational evaluation ($3,500.00); copies of medical records ($1,226.91); investigative services ($1,211.15, $1,128.81 and $738.23); and various lesser charges. (Docket No. 137-11 at 13–19).

C&C objects that GG&P's claim for litigation costs is "questionable" due to the lack of supporting invoices or proof of payment. (Docket No. 145 at 8). The Court agrees with C&C that the lack of additional support and the terseness of some of the cost descriptions in GG&P's billing records make it difficult to discern whether some of the costs incurred were reasonable in amount and related to GG&P's representation of Plaintiff in the State Court Action. C&C specifically challenges the $385.00 charge for "professional services: Belcher, Angel vs. Maher, Justin." (Docket No. 145 at 8). The Court agrees that this description is insufficient to identity

9

the nature of the services provided and how they related to the State Court Action. Therefore, the Court deducts $385.00 from the amount of costs to which GG&P is entitled. C&C also specifically challenges the $3,500.00 charge for a "comprehensive vocational evaluation." (Docket No. 145 at 8). Following oral argument, GG&P submitted, at the Court's direction, additional evidence that GG&P engaged a vocational expert and paid him $3,500.00 by check. (*See* Docket No. 158-1; Docket No. 158-2). The Court is satisfied by the additional evidence submitted by GG&P with respect to the charge for a vocational expert. In general, the remaining costs appear reasonable and related to GG&P's representation of Plaintiff. Accordingly, the Court finds that GG&P is entitled to $10,238.69 as reimbursement for litigation costs that it advanced.

**B. Attorneys' Fees**

The Appellate Division has already ruled that GG&P is entitled to retaining and charging liens for the legal work GG&P performed prior to its discharge and that the "[t]he amount of [GG&P's] contingent percentage fee is to be determined after a hearing conducted at the conclusion of the action." *Maher*, 42 N.Y.S.3d at 46. Thus, the task presently before the Court is to determine the amount of the contingent percentage fee to which GG&P is entitled. Under New York law, "[t]he award of reasonable attorneys' fees is a matter within the sound discretion of the court." *Ficaro v. Alexander*, 37 N.Y.S.3d 611, 613 (2d Dep't 2016) (citing *Ebrahimian v. Long Island R.R.*, 703 N.Y.S.2d 731, 732 (2d Dep't 2000). In determining the relative percentages of recovery to be awarded to attorneys, courts consider "the amount of time spent by the plaintiffs' former and current attorneys on th[e] action, the nature of the work performed, and their relative contributions." *Ficaro*, 37 N.Y.S.3d at 613.

GG&P's opening brief argues that GG&P is entitled to "at least 40% of the net legal fee received by [C&C] from the within action." (Docket No. 138 at 3). GG&P's reply brief argues

10

more modestly that GG&P is entitled to "as much as 40%, but not less than 20%, of the gross legal fee recovered by [C&C] herein."[6] (Docket No. 153 at 14). Conversely, C&C's opposition brief argues that GG&P is entitled to less than one percent of the attorneys' fee derived from the settlement of Plaintiff's claims. (Docket No. 145 at 11). The Court finds for the following reasons that GG&P is entitled to five percent of the contingency fee.

The Court has considered the relative amount of time expended by GG&P, FLF and C&C. GG&P's contemporaneous billing records reflect that GG&P devoted approximately 107 hours of attorney and paralegal time in furtherance of the State Court Action. (Docket No. 137-11 at 13). FLF's contemporaneous billing records reflect that FLF devoted approximately 589 hours to its representation of Plaintiff. (Docket No. 142-17). C&C has submitted non-contemporaneous time records indicating that C&C spent approximately 587 hours in connection with its representation of Plaintiff in this action. (Docket No. 141-4). C&C also asserts that the time records do not include at least 1,500 hours expended by C&C's attorneys to coordinate Plaintiff's case and participate in telephone conferences with Plaintiff, defense counsel, mediators and experts. (Docket No. 141 ¶ 53).

GG&P argues that the Court should not consider C&C's time records because they were not prepared contemporaneously and they were not produced by C&C to GG&P during discovery.[7] (Docket No. 153 at 11–12). The Court views the non-contemporaneous time records

---

[6] In various portions of its papers, GG&P seeks, alternatively, a percentage of the "net legal fee" (*see, e.g.*, Docket No. 138 at 3, 9) and a percentage of the "gross legal fee" (*see, e.g.*, Docket No. 138 at 6, 11; Docket No. 153 at 14), without clearly explaining the significance of the distinction.

[7] The Second Circuit has held that "any attorney . . . who applies for court-ordered compensation in this Circuit for work done after the date of this opinion must document the application with contemporaneous time records." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). However, that requirement does not apply here because C&C is not seeking court-awarded fees. *Cf. Gabayzadeh v. Brafman*, No. 09 Civ. 4095(PAC)(JCF), 2011 WL 1842762, at *6 (S.D.N.Y. May 11, 2011) ("*Carey* does not create a universal record keeping standard"), *aff'd*, 502 F. App'x 83 (2d Cir. 2012).

submitted by C&C as a demonstrative or illustrative summary of the tasks performed by C&C, as opposed to direct evidence of the work performed by C&C. That said, C&C's estimate of 587 hours appears facially reasonable and broadly accords with the Court's knowledge of the prior proceedings in this action. Moreover, C&C's estimate is corroborated by FLF, as well as counsel for Ms. Railo and counsel for QBS. (*See* Docket Nos. 142 ¶¶ 46–48; Docket No. 143 ¶¶ 27–29; Docket No. 144 ¶¶ 21–23). Based on these figures, GG&P expended roughly eight percent of the total number of hours spent by GG&P, FLF and C&C.[8]

The Court has also considered the attorneys' relative contributions to the ultimate resolution of this case. The Court affords some weight to the declarations provided by counsel for Ms. Railo and counsel for QBS, (Docket No. 143; Docket No. 144), although the Court is mindful that those declarations may be influenced by self-interest, (Docket No. 153 at 9). Based on the Court's familiarity with the prior proceedings in this case, the submitted declarations and exhibits, and the statements made by counsel at oral argument, it is clear to the Court that GG&P's contribution to the ultimate resolution of this case was relatively small. The State Court Action had not advanced very far at the time of GG&P's discharge, and little or none of GG&P's work contributed to the ultimate settlement of this action. Moreover, whatever contribution GG&P did make was partially offset by GG&P's unsuccessful efforts to challenge its discharge, including GG&P's commencement of an Article 81 proceeding seeking to have Plaintiff declared incapacitated, which delayed the prosecution and resolution of Plaintiff's claims for approximately eight months. (*See* Docket No. 143 ¶ 26).

---

[8] This figure was calculated as follows: $107 / (589 + 587 + 107) = 0.083$.

Considering the amount of time spent by the attorneys, the nature of the work performed, and their relative contributions, the Court finds that GG&P is entitled to five percent of the contingency fee derived from the settlement of Plaintiff's claims.[9]

**C. Interest**

GG&P's opening and reply briefs seek "interest running from November 30, 2015 at the New York State statutory rate of 9% per annum." (Docket No. 138 at 11; Docket No. 153 at 14–15). C&C's opposition brief does not address GG&P's request for interest. (Docket No. 145). The Court finds that GG&P is entitled to interest running from November 30, 2015 (the date requested by GG&P, which was shortly after the parties reached their settlement agreement) at the New York State statutory rate of nine percent per annum. *See* N.Y. C.P.L.R. § 5004 ("Interest shall be at the rate of nine per centum per annum, except where otherwise provided by statute.").

---

[9] GG&P cites various decisions in which New York courts have awarded shares of fees between twenty and forty percent to parties' former attorneys. (Docket No. 138 at 7). However, those decisions have limited application, as the determination at issue is highly fact-specific.

13

**III. CONCLUSION**

      For the foregoing reasons, GG&P's motion is granted in part and denied in part. The Court finds that GG&P is entitled to (1) reimbursement of GG&P's out-of-pocket litigation expenses in the amount of $10,238.69, (2) five percent of the contingency fee received by C&C from the settlement of Plaintiff's claims, and (3) interest running from November 30, 2015 at a rate of nine percent per annum. The Court directs C&C to remit the foregoing sums to GG&P within thirty days of the date of this Opinion and Order. The Clerk is respectfully requested to terminate the pending motion (Docket No. 136).

Dated:    February 27, 2018
            White Plains, New York

                                        **SO ORDERED:**

                                        _____
                                        JUDITH C. McCARTHY
                                        United States Magistrate Judge